**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Alice HOPPER, Defendant–Appellant.**

**United States of America, Plaintiff–Appellee,**

v.

**Terry Ingram, Defendant–Appellant.**

**United States of America, Plaintiff–Appellee,**

v.

**George Kendall Reed, Defendant–Appellant.**

**United States of America, Plaintiff–Appellee,**

v.

**David L. Ries, Defendant–Appellant.**

United States of America,
Plaintiff–Appellee,

v.

George Loren Reed, Defendant–
Appellant.

United States of America,
Plaintiff–Appellee,

v.

Janice Mallen, Defendant–Appellant.

United States of America,
Plaintiff–Appellee,

v.

Robert McKendrick, Defendant–
Appellant.

United States of America,
Plaintiff–Appellee,

v.

Roger Ardell Knight, Defendant–
Appellant.

Nos. 97–10445, 97–10457, 97–10463,
97–10494, 97–10495, 97–10496,
97–10515, 97–10527.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 13, 1999. [1]

Filed May 20, 1999.

1. Alice Hopper and Roger Knight were submitted on the briefs. All other appeals were argued. Fed. R.App. P. 34(a)(2).

Eric K. Fogderude, Fletcher & Fogderude, Fresno, California, for defendant-appellant David Lee Ries.

Dennis P. Riordan, Riordan & Rosenthal, San Francisco, California, for defendant-appellant George Loren Reed.

Kevin G. Little, Fresno, California, for defendant-appellant Janice Elizabeth Mallen.

Margaret A. McKnight, Fresno, California, for defendant-appellant Robert A. McKendrick.

Katherine Hart and Steven L. Crawford (On the Briefs), Law Offices of Katherine Hart, Fresno, California, for defendant-appellant Roger Ardell Knight.

Jonathan B. Conklin, Assistant United States Attorney, Fresno, California, for plaintiff-appellee United States.

Carl M. Faller, Jr., Assistant United States Attorney, Fresno, California, for plaintiff-appellee United States.

------

Patience Milrod (On the Briefs), Milrod & Phillips, Fresno, California, for defendant-appellant Alice Hopper.

Gary L. Huss, Wild, Carter & Tipton, Fresno, California, for defendant-appellant Terry Ingram.

Anthony P. Capozzi, Law Offices of Anthony P. Capozzi, Fresno, California, for defendant-appellant George Kendall Reed.

Before: Alfred T. Goodwin and Stephen S. Trott, Circuit Judges, and Samuel P. King, District Judge.[2]

TROTT, Circuit Judge:

Alice Hopper ("Hopper"), Terry Ingram ("Ingram"), George Kendall Reed ("Kendall Reed"), David Ries ("Ries"), George Loren Reed ("George Reed"), Janice Mallen ("Mallen"), Robert McKendrick ("McKendrick") and Roger Knight ("Knight") (collectively "Appellants") ap-

**2.** The Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation.

peal their convictions and sentences for conspiracy to obstruct proceedings before an agency in violation of 18 U.S.C. § 371, obstruction of proceedings before an agency in violation of 18 U.S.C. § 1505, false personation of a government official in violation of 18 U.S.C. § 912, and HUD fraud in violation of 18 U.S.C. § 1010. We have jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, and we affirm in part, reverse in part and remand this case to the district court for further sentencing proceedings in conformity with this opinion.

## BACKGROUND

Appellants are members of, or were otherwise associated with, the Juris Christian Assembly ("JCA"). The JCA was established by the late Everett Thoren ("Thoren"), who convinced his followers that the JCA was a tax exempt religious organization. Originally established in Oregon, Thoren moved the JCA to a warehouse owned by George Reed in Modesto, California. JCA members would place all their property in a trust with the JCA appointed as trustee. The JCA would pay its members' bills and transfer the remaining money back to its members, minus an administrative fee of ten percent. Because of the JCA's purported religious status, JCA members declared themselves tax exempt.

The IRS assigned IRS agent Mary Ryan ("Ryan") to investigate and collect unpaid taxes from Ingram. Ryan placed a IRS tax levy on Ingram's wages from Ingram's employer Modesto Toyota. Thoren promised Ingram that the JCA would "take care" of the wage levy. Shortly thereafter, Ries and another individual went to Modesto Toyota, and demanded that the IRS levy be removed. Modesto Toyota refused. Subsequently, Ries and Knight prepared a packet of documents, which were signed by George Reed, Mallen, McKendrick, Knight, and Ries and mailed to Ryan by Hopper. These documents included: (1) an arrest warrant for

Ryan; (2) requests for admissions; (3) a complaint demanding a refund of money garnished from Ingram's wages; (4) a verification form, informing Ryan that if she tried to enforce the levy she would be tried and have a sentence imposed upon her; (5) a letter informing Ryan that the levy was unconstitutional; (6) a letter informing Ryan that a court-martial had been conveyed; (7) an order stating that the levy constituted a declaration of war; (8) a letter requiring Ryan to respond to the charges; and (9) a pamphlet on "Silent Weapons for Quiet Wars." Many of these documents purported to be issued by the Solicitor General's Office, the Department of Justice, and the War Department.

After receiving the documents in the mail, Ryan checked the status of Ingram's tax liabilities. She learned that the IRS had received two "Article 1 Section 2" warrants for the amount of the wage levies and had applied those warrants in satisfaction of Ingram's debt. Ryan requested the warrants, determined they were worthless homemade checks, and reinstated Ingram's debt.

George Reed failed to pay more than $100,000 in withholding taxes he had collected from his employees at Reed Trenching. With fees and interest, that amount grew to over $416,000. IRS agent Michael Cash ("Cash") was assigned to investigate and collect George Reed's taxes. Cash caused liens to be filed against George Reed's property in Modesto. Assistant United States Attorney Diana Noweski ("Noweski") was assigned to prosecute the matter on behalf of the IRS. Noweski obtained a judgment in federal court against George Reed and sought to foreclose the judgment lien. Later, Noweski received a package of documents similar to those received by Ryan, including an order of arrest and a complaint claiming that Noweski was conspiring against the United States.

Shortly after Noweski received the documents, George Reed's son Kendall Reed went to the U.S. Marshal's Service and

attempted to pay the judgment against George Reed's property with a "Government Article I, §§ 1, 2 Warrant" similar to the spurious warrant received by the IRS on behalf of Ingram. Kendall Reed presented the warrant to Colleen Maloney ("Maloney") a U.S. Marshal's Service employee and insisted that she accept the warrant as satisfaction of the judgment. Maloney, however, refused to accept the warrant. Later, that same warrant was mailed to the Treasury Department in Washington D.C., but the IRS mailed the warrant back to George Reed, stating that it would not be accepted as payment.

In December 1993, Kendall Reed went to the Stanislaus County Recorder's office to have the liens removed from George Reed's land. Karen Mathews ("Mathews"), the county recorder, refused to remove the liens. George Reed also went to see Mathews to have the liens removed, but she again refused to remove the liens. Previously, Mathews had received a letter from Knight that quoted the Supreme Court decision in *Simmons v. United States,* 390 U.S. 377, 390–91, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), to the effect that "it is intolerable that one Constitutional Right should have to be surrendered in order to assert another." Knight's letter threatened that "anyone who attempts to enforce a void 'unlaw' does so at their own peril and risk." After George Reed's visit, Mathews received another letter also quoting *Simmons,* which contained a bullet and threatened that if Mathews continued to enforce a "void 'unlaw,'" "the next bullet would be directed at [her] head." Later, Mathews was assaulted by Roger Steiner. Steiner scratched Mathews on the neck, held a gun to her head, dry fired the gun numerous times and told Mathews to file the documents she had been ordered to file.[3]

Based on these actions, Appellants were indicted in a multi-count indictment, which

among other charges alleged a conspiracy by Appellants to obstruct the due and proper proceedings of law before the IRS. The jury found Appellants guilty of the conspiracy, and this appeal followed.

## DISCUSSION

### I. Single Conspiracy

■ Appellants argue that there was insufficient evidence to prove that they were members of a single conspiracy as opposed to two or more separate conspiracies. There is sufficient evidence to support a conviction if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

■ A single conspiracy "is one overall agreement to perform various functions to achieve the conspiracy's objectives." *United States v. Shabani,* 48 F.3d 401, 403 (9th Cir.1995) (internal quotation omitted). A formal agreement is not necessary; an agreement may be inferred from the Appellants' acts pursuant to the scheme, or other circumstantial evidence. *See United States v. Clevenger,* 733 F.2d 1356, 1358 (9th Cir.1984). "A single conspiracy may involve several subagreements or subgroups of conspirators." *United States v. Bibbero,* 749 F.2d 581, 587 (9th Cir.1984). To distinguish a single from a multiple conspiracy, we examine "the nature of the scheme; the identity of the participants; the quality, frequency, and duration of each conspirator's transactions; and the commonality of time and goals." *Id.*

■ In this case, the scheme encompassed a sham organization created to evade tax liabilities. The participants were all members of or somehow affiliated with the JCA. Although each defendant's

---

3. Steiner was a defendant in the trial and was convicted of carrying out this attack on behalf of the JCA. Steiner's appeal has been severed.

level of participation differs with each act, all defendants engaged in one or more overt acts. The actions were performed at the JCA headquarters in Modesto and had as its purpose preventing the collection of lawful taxes from persons sheltered by the JCA. Viewing this evidence in the light most favorable to the government, we hold there was sufficient evidence to prove that Appellants were engaged in a single conspiracy.[4]

## II. Obstruction of a Proceeding Before An Agency

Kendall and George Reed argue that there is insufficient evidence to prove that they attempted to obstruct a pending proceeding before the IRS. George and Kendall Reed were indicted under § 1505 for obstructing a proceeding before a department or agency of the United States, in this case the IRS. The indictment alleged that Kendall Reed attempted to prevent collection of the tax deficiencies by paying the judgment with a "fraudulent monetary instrument, entitled 'Government Art I §§ 1,2 Warrant.'" The Reeds argue that their actions may have obstructed a judgment of the federal courts, but because federal courts are not "departments" or "agencies," they should not have been charged under § 1505.

In *United States v. Aguilar*, 515 U.S. 593, 600, 115 S.Ct. 2357, 132 L.Ed.2d 520 (1995), the defendant was indicted under 18 U.S.C. § 1503 for obstructing a judicial proceeding. The indictment alleged that Aguilar had intentionally given false information to federal investigators who were potentially going to be called to testify before a grand jury. The Supreme Court held that lying to an investigating agent who "might or might not testify before a grand jury" did not constitute obstruction of a judicial proceeding. *Aguilar*, 515 U.S. at 600. The Court noted, however, that

had the investigators been subpoenaed or summoned by the grand jury, or had there been proof that they were acting as an arm of the grand jury, there would have been enough to support a conviction for obstructing a judicial proceeding. *Id.* at 600–02. The Court held that in order to be indictable for obstruction of a judicial proceeding, the defendant's actions must have a "natural and probable effect of interfering with the due administration of justice." *Id.* at 601 (internal quotation marks omitted); *see also United States v. Ryan*, 455 F.2d 728, 734 (9th Cir.1972) ("The acts complained of must bear a reasonable relationship to the subject of the grand jury inquiry."); *United States v. Kassouf*, 144 F.3d 952, 956–57 (6th Cir. 1998) (holding that the act must have a relationship in time, causation or logic with the judicial proceedings).

■ In this case, we hold that the actions taken by the Reeds had the "probable and natural" affect of obstructing a proceeding before the IRS. If accepted, the phony warrant would have precluded collection of the tax debt and the enforcement of the IRS tax liens. Until the debt behind those liens was satisfied, the collection proceeding before the IRS continued. Moreover, the Reeds knew that the judgment was for the IRS liability, which the IRS was seeking to collect. Indeed, the Reeds' warrant was made payable to the "U.S. District Court/*IRS* C/O U.S. Marshall (sic)." (emphasis added). Additionally, after the warrant was rejected by the U.S. Marshal, the warrant was mailed to the Treasury Department for payment to the IRS. The Reeds knew that if the phony warrant had been accepted by the U.S. Marshal, the "natural and probable" effect would be to satisfy the delinquent taxes and prevent collection of money owed to the IRS. That understanding and the actions taken to prevent collection constitute

---

4. Appellants argue that the jury rejected the single conspiracy theory by finding some defendants guilty of one part of the conspiracy but acquitting them of others. However, the

existence of facially inconsistent jury verdicts is not grounds for reversing a conviction. *United States v. Lennick,* 18 F.3d 814, 821 (9th Cir.1994).

obstruction of an IRS proceeding. *See Aguilar*, 515 U.S. at 599–601.

The Reeds rely on the Supreme Court's decision in *Hubbard v. United States*, 514 U.S. 695, 115 S.Ct. 1754, 131 L.Ed.2d 779 (1995) for the proposition that they may have obstructed a judicial proceeding, but not a "department" or "agency" of the United States. *Hubbard* is distinguishable. In *Hubbard*, the defendant made false representations in papers filed in a bankruptcy proceeding and was indicted under 18 U.S.C. § 1001. Section 1001 criminalizes the making of false statements or similar conduct "in any manner within the jurisdiction of any department or agency of the United States." 18 U.S.C. § 1001. The Supreme Court held that a court is not a department or agency, and therefore that submitting false documents to a bankruptcy court did not violate § 1001. *Hubbard*, 514 U.S. at 715. However, in *Hubbard*, the only government entity involved was the bankruptcy court, and the only activity was the bankruptcy proceeding. The false statements did not, therefore, have the "natural and probable" effect of interfering with proceedings before a department or agency. Conversely, in this case, the IRS was a party to the judicial proceeding, and the phony warrant had the "natural and probable" effect of obstructing collection of delinquent taxes by the IRS. Additionally, enforcement of tax liens by the IRS is an IRS proceeding. The fact that the IRS was required to enforce its lien in federal court does not change the IRS's involvement. It was an IRS tax lien, prosecuted by an Assistant United States Attorney representing the IRS, and any money collected would have been paid to the IRS.

The Reeds correctly point out that the IRS levies merged with the judgment, and that the judgment was to be collected by the United States Marshal's service not the I.R.S. However, money paid to the U.S. Marshal is then paid to the party who holds the judgment, in this case the IRS. Therefore, preventing the collection of the funds by the U.S. Marshal would have the direct effect of obstructing collection of those funds by the IRS. Because collection of delinquent taxes is an IRS proceeding, the Reeds were properly convicted under 18 U.S.C. § 1505.

### III. Requested Affirmative Defense Instruction

■ At trial, the Appellants argued that the Ingram wage levies were invalid and therefore that they could not be criminally responsible for obstructing collection of those levies. The district court rejected their argument and instructed the jury that "[t]he alleged invalidity of a levy under the revenue laws of the United States is not a defense." Appellants argue that this instruction was erroneous. Whether a jury instruction accurately states the law is an issue of law reviewed de novo. *United States v. Eshkol*, 108 F.3d 1025, 1028 (9th Cir.1997).

■ We have not addressed whether the invalidity of the underlying levy is a defense to a charge of obstruction under § 1505. However, in *United States v. Lewis*, 657 F.2d 44, 45 (4th Cir.1981), the Fourth Circuit held that "the underlying validity of the levy under the revenue laws of the United States is a matter to be determined in a separate action of a civil nature and may not be used as a defense to a criminal charge such as [obstructing an IRS proceeding]." We agree with the Fourth Circuit and hold that the invalidity of the underlying levies is not a defense to charges of obstruction. If Appellants sincerely believed the levies were invalid, they should have challenged those levies in a civil action, rather than with threatening letters, phony warrants and violence. Because the invalidity of the underlying levy is not a defense to an obstruction charge, the district court did not err in refusing to give the requested instruction.

### IV. Calculating Amount of Loss

■ Appellants argue that the district court erred by including penalties and fees

into the amount of loss for sentencing. The district court's interpretation of the Guidelines is reviewed de novo. *United States v. Bailey*, 139 F.3d 667, 667 (9th Cir.1998).

■■ The Guidelines instruct the district court to determine tax loss and then to determine the offense level by using the tax table at § 2T4.1. U.S.S.G. §§ 2T1.1, 2T1.4. The application notes specifically state that "tax loss does not include interest or penalties." U.S.S.G. §§ 2T1.1 cmt. 1. The government argues that subtracting the penalties and fees from the amount of loss fails to adequately address the nature of the conspiracy, which sought to prevent the collection of over $400,000. We agree but are confined by the plain language of the Guidelines. *See United States v. Pollen*, 978 F.2d 78, 91 n. 29 (3d Cir.1992) (noting that by failing to include interest and penalties, the Guidelines fail to "reflect accurately the criminal behavior," but affirming the sentence based on tax amount without interest and penalties). Given the plain language of the Guidelines, the district court erred in including interest and penalties in the amount of tax loss. We therefore vacate Appellants' sentences and remand this case to the district court for re-sentencing.

## V. Sentencing Under § 2T1.9

■■ Appellants argue that the district court erred in sentencing them under § 2T1.9 instead of § 2J1.2. Section 1B1.2 of the Guidelines instructs the sentencing court to determine "the offense guideline section ... most applicable to the offense of conviction (i.e., the offense conduct charged in the count of the indictment or information of which the defendant was convicted)." U.S.S.G. § 1B1.2(a). The accompanying commentary refers to the Guidelines's Statutory Index (Appendix A), which "specifies the guideline section or sections ordinarily applicable to the statute of conviction." U.S.S.G.App. A. at 373. However, the Statutory Index does not establish "immutably the exclusive list of available guidelines for given offenses," *United States v. Cambra*, 933 F.2d 752, 755 (9th Cir.1991), and in an atypical case, the court may use "the guideline section most applicable to the nature of the offense conduct charged in the count of which the defendant was convicted." U.S.S.G.App. A. at 373.

Appellants were convicted of conspiracy under § 371 and obstruction of proceedings under § 1505. In this case, the district court properly sentenced Appellants according to § 2T1.9, which covers conspiracies to "impede, impair, obstruct or defeat tax." *See* U.S.S.G. § 2X1.1(c)(1) ("When an attempt, solicitation, or conspiracy is expressly covered by another offense guideline section, apply that guideline section.").

According to the Statutory Index, defendants convicted of violating § 1505 should normally be sentenced under § 2J1.2. In this case, however, the district court looked at the overt acts taken by Appellants and held that § 2J1.2 did not "address the seriousness of the defendants' conduct." We agree. Section 2J1.2 does not consider the amount of tax liability Appellants attempted to obstruct or the sometimes violent nature of the conspiracy. Therefore, the district court correctly applied § 2T1.9.

## VI. Enhancement for Violent Conduct Under § 2T1.9(b)(1)

■■ George Reed and Knight argue that the district court erred in increasing their sentences based on violent activity for which they were acquitted. We review the district court's factual findings in the sentencing phase for clear error. *See, e.g., United States v. Ladum*, 141 F.3d 1328, 1344 (9th Cir.1998).

■■ "[A] jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." *United States v. Watts*, 519

U.S. 148, 157, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997). However, in *United States v. Restrepo*, 946 F.2d 654, 659 (9th Cir.1991) (en banc), we held that "when a sentencing factor has an extremely disproportionate effect on the sentence relative to the offense of conviction," the government may have to satisfy a "clear and convincing" standard. *See also Watts*, 519 U.S. at 156–57 (recognizing, but not addressing, a split in the Circuits as to whether relevant conduct must be proven by clear and convincing evidence in extreme circumstances).

■ Knight's resulting four-level increase in sentence is not an exceptional case that requires clear and convincing evidence. *See Watts*, 519 U.S. at 156–57 (holding that an increase of two levels is not an extreme case); *United States v. Kikumura*, 918 F.2d 1084, 1100–01 (3d Cir.1990) (noting that the preponderance of evidence standard would satisfy due process when the result is a four-level increase in offense level). However, even if Knight's enhancement required clear and convincing evidence, the district court found that "the evidence was clear and convincing," that Knight wrote the threatening letter sent to Mathews. The letters in this case contain identical language and punctuation and the letters were both received by Mathews, who happened to be working on the George Reed tax liability. Given the similarity of the letters and the fact that both were delivered to the person working on the George Reed tax liability, we hold that the district court correctly held that Knight sent the threatening letter.

■ In George Reed's case, the result was a seven-level increase, three for official victim and four for violent conduct. The seven-level adjustment increased the sentencing range from 24–30 months to 63–78 months. Given the relative shortness of George Reed's sentence, a potential increase of 48 months satisfies the *Restrepo* extremely disproportionate impact test. Consequently, the district court

erred in failing to apply the clear and convincing standard. We therefore vacate George Reed's sentence and remand this case to the district court for re-sentencing on this issue using the clear and convincing standard.

## VII. Enhancement Under § 2T1.9(b)(2)

■ George Reed argues that the district court erred in applying both a four-level increase under § 2T1.9(b)(1) and a two-level increase under § 2T1.9(b)(2). The Guidelines provide that if both (b)(1) and (b)(2) enhancements apply, the court should "use the greater." Here, the district court erred in applying both. We therefore vacate George Reed's sentence and remand for re-sentencing.

## VIII. Ingram's Sentence

Ingram argues that the district court erred by including the George Reed tax liabilities in his relevant conduct. Section 1B1.3(a)(1)(B) provides that the relevant conduct in a conspiracy includes "all reasonably foreseeable acts and omissions of others in furtherance of the [conspiracy]." A defendant's relevant conduct does not include the conduct of members of a conspiracy prior to the defendant's joining the conspiracy or after the defendant has properly withdrawn from the conspiracy. U.S.S.G. § 1B1.3(a)(1)(B) cmt. 2; *Levine v. United States*, 383 U.S. 265, 266, 86 S.Ct. 925, 15 L.Ed.2d 737 (1966).

■ Ingram argues that because the George Reed tax liabilities had reached judgment before he joined the JCA he should not be responsible for George Reed's tax amount. However, obstruction of the collection of George Reed's liabilities had not ended when Ingram joined the JCA. Ingram first contacted the JCA in February 1993 and he began to filter money through the JCA shortly thereafter. Although the Reed tax liabilities had been reduced to a judgment before Ingram joined the JCA, the JCA took acts to prevent collection of the Reed tax liability

after Ingram joined the conspiracy. Specifically, the arrest warrant and other documents sent to Noweski were mailed in June or July of 1993. Because the conspiracy to prevent collection of the Reed tax liabilities was ongoing during the time that Ingram was a co-conspirator in the JCA, he is responsible for the Reed tax loss.

Ingram argues that obstruction of the Reed tax liability was not foreseeable. We disagree. Ingram knew that other persons were using the JCA, as he was, to filter money and prevent the collection of taxes. Additionally, the district court correctly held that because George Reed owned the land on which the JCA was headquartered, it was foreseeable that he was one of the people filtering money through the JCA. Ingram was therefore liable for the George Reed tax liabilities. *See United States v. Lorenzo*, 995 F.2d 1448, 1460 (9th Cir.1993).

## IX.  Other Issues

Finally, we note that Appellants raise numerous other points of error on appeal. After having carefully considered each issue, we affirm the district court on the remaining issues.

## CONCLUSION

For the reasons stated herein we affirm in part, reverse in part and remand for further proceedings in conformity with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.