UNITED STATES of America,
Plaintiff–Appellee,

v.

Scott D. MASSEY, Defendant–
Appellant.

No. 02–5594.

United States Court of Appeals,
Sixth Circuit.

Oct. 29, 2003.

Victor L. Ivy, Asst. U.S. Attorney, U.S. Attorney's Office, Jackson, TN, for Plaintiff–Appellee.

Steven L. West, McKenzie, TN, for Defendant–Appellant.

Before GUY and DAUGHTREY, Circuit Judges, and LAWSON, District Judge.*

LAWSON, District Judge.

The defendant, Scott Massey, appeals his sentence for manufacturing 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine. Massey argues that the district court erred when it increased his offense level on the basis of U.S.S.G. § 2D1.1(b)(6)(B) (Dec. 16, 2000 Supp.), which calls for an enhancement when the offense "created a substantial risk of harm to the life of a minor." The methamphetamine was manufactured in a shed attached to a residence that housed a day-care center. We find that Massey's relevant conduct placed him squarely within the scope of this section of the Sentencing Guidelines, and we therefore affirm Massey's sentence.

---

* The Honorable David M. Lawson, United States District Judge for the Eastern District of Michigan, sitting by designation.

## I.

The defendant's conviction was based on his guilty plea entered on December 28, 2001, at which time Massey admitted to purchasing Sudafed tablets that he knew would be used by his co-defendant, Wade Beard, for manufacturing methamphetamine. At the plea hearing, the assistant United States attorney represented to the court that evidence discovered during the execution of a search warrant at Beard's residence on March 11, 2001 constituted the equipment and ingredients for a methamphetamine manufacturing operation. Massey admitted that he was present that day when methamphetamine was manufactured. The defendant suggests that these statements make up the only proof in the record of his role in the operation, and his limited involvement as shown by his admissions is not sufficient to prove that he created a substantial risk of harm to minor children.

However, the district court conducted a sentencing hearing on April 19, 2002 at which police officer Shawn Palmer testified. He stated that he was on routine patrol in Union City, Tennessee on March 11, 2001 when, at approximately 2:30 a.m., he smelled the odor of hydrogen chloride gas emanating from the Beard residence. In the yard, he observed a clear, plastic bottle containing a smoky liquid that was emitting hydrogen chloride gas odors. Palmer knocked at the door but got no response, so off he went to obtain a search warrant.

He returned with the warrant at 5:30 a.m. that same morning and, once again, his knocks on the door of the residence aroused no one. Palmer and his compatriots forcibly entered the residence and saw that the front door was barricaded. They observed Wade Beard laying face-down in one bedroom, and the defendant, Scott Massey, was spread-eagle, face-down on the floor of another bedroom. The officers discovered a shed built onto the house that was locked from the inside. After they breached the door and let the thick hydrogen chloride gas vapors vent, they found stored there starter fluid containing ether, bottles of Heet (a substance containing methanol), empty bottles previously used to generate hydrogen chloride gas, and other supplies used in the manufacture of methamphetamine. Chemical spills were on the floor of the shed. They found towels and coffee filters that smelled strongly of ether and ammonia. No coffee maker was found in the shed or the attached house. Also found and seized from the shed were lithium batteries that had been torn apart to extract the metal, three gallons of anhydrous ammonia, numerous blister packs containing ephedrine and pseudoephedrine, twenty-two ounces of ether, one gallon of hydrochloric acid, and lithium metal.

Containers smelling of anhydrous ammonia were found in Massey's vehicle. The officers also discovered on the premises a propane-type tank that contained anhydrous ammonia, which exploded when the brass valve failed during an attempt to move it. They found a hydrochloride gas generator in the front yard. There was a bottle of Liquid Fire, which contains strong acid, under the sink, and the officers found a semiautomatic pistol under Wade Beard's bed.

Palmer testified that the wall separating the shed and the house contained a hole that had been cut to allow access directly into the house. The hole was covered by a red sleeping bag. When Palmer pulled the sleeping bag away, he was able to crawl through the hole into an area of the house where children had played, as evidenced by playhouses and toys lined around the room. Stacy Beard was not at the residence at the time of the search, but she was located later that morning and

admitted to conducting a daycare center at the house.

Parents who left their children at Stacy Beard's daycare center testified that they often smelled strong potpourri scents, as well as "funny odors" in the house at various times. One parent said that the odor smelled like a chemical substance and that her son often had respiratory infections. Another child told his mother that he had spoken to Wade Beard through a hole in the wall. Another parent confirmed that she had seen Scott Massey at the premises.

The 2000 edition of the Sentencing Guideline Manual and the December 16, 2000 Supplement were used to determine the sentence. The district court found that the base level for Massey's violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) was 12 according to U.S.S.G. § 2D1.1(c)(14), because Massey admitted responsibility for two ounces of methamphetamine. The base level was increased by two levels to 14 because the offense involved the unlawful emission of a toxic substance. *See* U.S.S.G. § 2D1.1(b)(5).[1] The district court then applied Section 2D1.1(b)(6)(B),[2] which called for an increase in the offense level to 30 whenever the offense conduct created a substantial risk of harm to minor children. The court overruled the defendant's objection to this increase after hearing the testimony. The court found that there were substantial amounts of supplies stored on the premises, a gas generator was found in the yard expelling toxic gas into the environment, and the laboratory was located in a residential neighborhood in a home used as a daycare center. The court concluded:

> It seems clear to me that this is exactly the kind of case that the ... Sentencing Commission and the Senate had in mind when they created the enhancement for a methamphetamine lab creating a substantial risk of harm to human life or the environment.
>
> Now, Mr. Massey's situation is somewhat less egregious than the Beards' because Mr. Massey didn't run the daycare center. It was not his house. He had, perhaps, less obligation to these children than the Beards did. But that makes no difference in my conclusion because he was in on the cook. The cook created a substantial risk of harm to the occupants of the house or the children who stayed there. So the enhancement is proper for him as well.

J.A. at 141.

The offense level of 30 was reduced by three levels for acceptance of responsibility. Massey's criminal record placed him in Category II. The resulting sentencing range was 78 to 97 months. The district court sentenced Massey to 78 months in custody, to be followed by four years of supervised release. Massey filed a timely appeal.

## II.

The district court's factual findings at a sentencing proceeding are reviewed for clear error, and its application of the Sentencing Guidelines to those facts is reviewed *de novo*. *United States v. Butler,* 297 F.3d 505, 516 (6th Cir.2002), *cert. denied* —— U.S. ——, 123 S.Ct. 2074, 155 L.Ed.2d 1060 (2003). Whether the defendant's conduct created a substantial risk of harm to other human life pursuant to the Sentencing Guidelines is a mixed question of law and fact that this court reviews *de*

---

1. This provision is found at § 2D1.1(b)(5)(A) in the current edition of the Sentencing Guideline Manual.

2. This provision is now found at § 2D1.1(b)(5)(C) of the current edition of the Sentencing Guideline Manual.

*novo. United States v. Layne,* 324 F.3d 464, 468 (6th Cir.2003).

The defendant has phrased the issue on appeal as a challenge to the district court's exercise of discretion in departing upward to level 30. He says that the court abused its discretion because the government did not offer clear and convincing evidence that Massey created a substantial risk of harm to children. This argument mischaracterizes the sentencing proceedings. The district court did not depart upward. A departure by its nature is a sentence that falls outside the sentencing range that is prescribed by the application of the Sentencing Guideline provisions. *See Koon v. United States,* 518 U.S. 81, 85, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996); *United States v. Mayle,* 334 F.3d 552, 563 (6th Cir.2003). Departures are discussed in Chapter Five of the Guideline Manual. As a general rule, a court may depart from the sentencing range yielded by the Guideline formula "if the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." U.S.S.G. § 5K2.0 (internal quotation marks omitted). Here, the court applied the explicit provisions of the Sentencing Guidelines to arrive at level 30 in Massey's case. This was not a departure, but rather a guided enhancement contemplated by the Sentencing Commission.

The relevant Guideline section at issue in this case was created by an emergency amendment that became effective on December 16, 2000 and was then known as Section 2D1.1(b)(6)(B). *See* United States

Sentencing Commission Guideline Amendment 608; *Layne,* 324 F.3d at 468. The provision states:

If the offense (i) involved the manufacture of amphetamine or methamphetamine; and (ii) created a substantial risk of harm to the life of a minor or an incompetent, increase by 6 levels. If the resulting offense level is less than level 30, increase to level 30.

U.S.S.G. § 2D1.1(b)(6)(B) (Dec. 16, 2000 Supp.). The Application Note relevant to this section states:

(A) *Factors to Consider.*—In determining, for purposes of subsection (b)(6), whether the offense created a substantial risk of harm to human life or the environment, the court may consider factors such as the following:

(i) The quantity of any chemicals or hazardous or toxic substances found at the laboratory, or the manner in which the chemicals or substances were stored.

(ii) The manner in which hazardous or toxic substances were disposed, or the likelihood of release into the environment of hazardous or toxic substances.

(iii) The duration of the offense, or the extent of the manufacturing operation.

(iv) The location of the amphetamine or methamphetamine laboratory (*e.g,* in a residential neighborhood or a remote area) and the number of human lives placed at substantial risk of harm.

U.S. Sentencing Guidelines Manual § 2D1.1, comment. (n.21).[3]

---

3. In the current edition of the Guideline Manual, this note appears as Application Note 20. The only material alteration is that the previous version listed the factors as ones the court "may consider," and the current version states that the court "shall include consideration of the following factors" in deciding whether to apply the enhancement. *See* U.S.S.G., App. C, Amendment 608; *c.f.* U.S.S.G. § 2D1.1, comment. (n.20) (2002).

The district court made factual findings on these factors and concluded that on balance they called for the application of the enhancement provision. We "will disturb the underlying factual findings only if they are clearly erroneous." *United States v. Ennenga,* 263 F.3d 499, 502 (6th Cir.2001) (quoting *United States v. Hill,* 79 F.3d 1477, 1481 (6th Cir.1996)). The thrust of Massey's argument, however, is that the district court did not apply the correct standard of proof; he says that a "clear and convincing" standard should apply.

There is a line of cases that suggests that clear and convincing evidence must be shown in order to support an enhancement "when a sentencing factor has an extremely disproportionate effect on the sentence relative to the offense of conviction." *United States v. Hopper,* 177 F.3d 824, 833 (9th Cir.1999). *See also United States v. Kikumura,* 918 F.2d 1084 (3d Cir.1990). This circuit has chosen not to follow that line of authority. *See United States v. Graham,* 275 F.3d 490, 517 n. 19 (6th Cir.2001). "We pointed out in *Graham* that as long as a sentencing factor does not alter the statutory range of penalties faced by the defendant for the crime of which he was convicted, the Supreme Court permits the factor to be found by a preponderance of the evidence." *Mayle,* 334 F.3d at 557. The same argument was rejected in *Layne,* in which we affirmed the application of an enhancement provision that is closely related to the Section under consideration here. *See Layne,* 324 F.3d at 472–73 (following *Graham* with respect to the application of U.S.S.G. § 2D1.1(b)(6)(A) (Dec. 16, 2000 Supp.)).

The district court did not specify the standard of proof it utilized in this case, but it does not matter. The evidence supports the application of this enhancement as to Massey under either standard, particularly by a preponderance of evidence.

Massey was convicted under an aiding and abetting theory. His Sentencing Guideline range is scored on the basis of his "relevant conduct," which includes

(1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and

(B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, . . .

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense; [and]

. . .

(3) all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions.

U.S.S.G. § 1B1.3(a)(1), (3).

Massey concedes in his reply brief that the argument favoring the application of Section 2D1.1(b)(6)(B) to Wade Beard is "compelling." Def. Reply Br. at 1. Indeed, the district court made specific findings on each of the factors enumerated in the Commentary. Addressing the first factor, the district court found that there were substantial amounts of hazardous or toxic substances stored in the shed, attached to a residence that was used as a daycare center. Next, the court found that, although there was no evidence as to how some of the chemicals were disposed of because the officers entered the house shortly after a "cook," a "gas generator was in the yard blowing gas" when the

officers arrived. J.A. at 139–40. Under the third factor, the court concluded that the operation was "ongoing", based on "strong evidence that there was more than one cook." J.A. at 140. Finally, on the fourth factor, the court found that there was "no worse place for a methamphetamine lab than in a daycare center ... [s]o the location of this laboratory particularly creates a substantial risk of harm." *Ibid.*

There was also evidence that the interior of the house was festooned with toys, playhouses and other accouterments of a place where children were cared for. A parent of one of the children testified that she had seen Massey at the Beard residence on an occasion other than the March 11, 2001 "cook." There is ample evidence in the record that Massey was aware that children were present on the premises at various times, and that the "reasonably foreseeable acts and omissions" of the Beards in furtherance of the methamphetamine manufacturing operation would expose those children to a substantial risk of harm. The district court's findings on this issue with respect to Massey are well-supported by the record.

### III.

We find that the district court properly applied U.S.S.G. § 2D1.1(b)(6)(B) (Dec. 16, 2000 Supp.) to enhance Massey's offense level to 30. The sentencing range was correctly calculated, and Massey was sentenced within that range. Accordingly, the judgment of sentence entered by the district court is AFFIRMED.