# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

   v.

JOEY CLARK,
    *Defendant-Appellant.*

No. 05-10480

D.C. No.
CR-03-00214-PMP

OPINION

Appeal from the United States District Court
for the District of Nevada
Philip M. Pro, Chief District Judge, Presiding

Argued and Submitted
May 19, 2006—San Francisco, California

Filed July 5, 2006

Before: Betty B. Fletcher, Alex Kozinski, and
Raymond C. Fisher, Circuit Judges.

Opinion by Judge B. Fletcher;
Concurrence by Judge Kozinski

## COUNSEL

Mario D. Valencia, Henderson, Nevada, for the appellant.

Daniel G. Bogden and Robert L. Ellman (argued), U.S. Department of Justice, Las Vegas, Nevada, for the appellee.

## OPINION

B. FLETCHER, Circuit Judge:

Joey Clark appeals his 46-month sentence for unlawful possession of a firearm. He asserts that the district court violated *United States v. Booker*, 543 U.S. 220 (2005), by failing to treat the United States Sentencing Guidelines ("Sentencing Guidelines" or "Guidelines") as advisory; applied the Guidelines in an unreasonable manner; and erroneously found facts that should have been sent to a jury and/or proved beyond a reasonable doubt — or failed to adequately make any factual finding whatsoever. We have jurisdiction pursuant to, inter alia, 18 U.S.C. § 3742, and we review the sentence as a whole for reasonableness. *United States v. Plouffe*, 445 F.3d 1126, 1131 (9th Cir. 2006).

We remand for resentencing on the sole ground that we cannot determine whether the district court made any factual finding to support a two-level enhancement for carrying a gun with an obliterated serial number. We reject all other arguments raised by Clark in this appeal.

## BACKGROUND

On April 30, 2003, North Las Vegas police executed a traffic stop of an automobile moving at a high speed. Appellant

Joey Clark, a passenger in the car, was asked to exit the vehicle, and police officers noticed he was wearing a bullet-proof vest. Clark tried to flee; a struggle ensued; and a handgun fell from Clark's pants and landed on the ground. Police then discovered a second gun in Clark's possession.

Clark had a previous conviction for possessing a controlled substance with intent to sell, and a federal grand jury returned an indictment charging Clark with unlawful possession of a firearm under 18 U.S.C. § 922(g)(1) and forfeiture of the firearms under 18 U.S.C. § 924(a)(2). The indictment specifically alleged that Clark "knowingly possess[ed a] . . . handgun, with an obliterated serial number."

Clark pleaded guilty to the charges in the indictment without a plea agreement and submitted objections to the Pre-Sentence Report, arguing that it would be error to assign a two-level increase for possessing a weapon with an obliterated serial number. He repeated those objections at the sentencing hearing, where he also argued that he carried the guns because his life had been threatened by gangs who believed he had been involved with another murder.

The district court noted at the outset of the sentencing hearing that "the guideline calculation is an advisory vehicle now. It's not mandatory or binding on the Court, and the Court has to fashion a reasonable sentence in accord with [18 U.S.C. § 3553]." The Court further stated, with regard to the two-level increase, that "subsequent to *Booker* and in accord with the provisions of [18 U.S.C. § 3553] those would be factors which the Court could also consider in fashioning a reasonable sentence." The court restated the advisory nature of the Guidelines several more times during the hearing.

The district court acknowledged that Clark had earned his high-school degree and had likely "turned a corner" in making a more productive life, but eventually determined that "as a person who had a felony conviction, you don't have the

right to carry a gun." The court expressed sympathy for Clark's expressed fear of retaliation but ultimately decided that Clark's possession of two loaded firearms and his attempt to wrest away from a police officer made Clark's conduct sufficiently dangerous to warrant the two-level enhancement:

> All of these factors, everything I have heard — and I am giving credit to things that were said by your former attorney [from a previous trial in which Clark was acquitted] because I think she has some insight into you — by your father who also obviously does and your attorney and by you yourself suggest to me that, probably, there's merit in taking somewhat of a chance in fashioning a sentence in your case.

> But to give the kind of sentence that [your present attorney] very ably argues for would be to ignore the seriousness of your conduct and would also provide very little deterrent to other people out there who might engage in similar conduct.

The district court decided to stay "within the guideline range" and sentenced Clark to 46 months, the low end of the sentence. The court awarded Clark credit for time served. Judgment was entered on June 27, 2005, and this timely appeal followed.

## DISCUSSION

[1] Clark argues that the district court violated *Booker* by treating the Sentencing Guidelines as mandatory. However, the district court repeatedly cited *Booker* for the proposition that the Sentencing Guidelines are now advisory and demonstrated both an awareness of, and compliance with, the remedial aspect of *Booker*.

[2] Clark's argument that his sentence is "unreasonable" under *Booker* also fails. "In determining whether a sentence

is unreasonable, we are guided by the sentencing factors set forth in 18 U.S.C. § 3553(a), including the sentencing range established by the Sentencing Guidelines." *Plouffe*, 445 F.3d at 1131. These factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentences and the sentencing range established by the Sentencing Guidelines; (5) pertinent policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities among defendants who have similar criminal records and have been found guilty of similar conduct; and (7) the need to provide restitution to victims. *See* 18 U.S.C. § 3553(a).

Clark claims that the district court ignored the purposes and dictates of § 3553(a), but the record reflects otherwise. The district court considered the severity of the sentence in light of Clark's self defense argument, his desire for better vocational training, his efforts to rehabilitate himself after the arrest, and his arguments regarding selective enforcement and a disproportionately long sentence. The court noted, "I do have to consider the guidelines . . . . And the provisions of [18 U.S.C. §] 3553 set forth a litany of factors . . . and I keep them written down, so I don't forget them." The court balanced these concerns against the purpose of deterring future crimes.

**[3]** In sum, the district court conducted a thorough sentencing hearing and explained its decision in thorough and careful detail. It sentenced Clark to the low end of the Guidelines range, which suggests that it may have credited Clark in light of the mitigating circumstances mentioned above. Its determination is eminently "reasonable" under *Booker*.

**[4]** Clark argues that the Sixth Amendment entitles him to a jury finding on the issue of the obliterated serial number and/or that the Fifth Amendment requires that such findings

be made beyond a reasonable doubt. But, "[s]tanding alone, judicial consideration of facts and circumstances beyond those found by a jury or admitted by the defendant does not violate the Sixth Amendment right to jury trial. A constitutional infirmity arises only when extra-verdict findings are made in a mandatory guidelines system." *United States v. Ameline*, 409 F.3d 1073, 1077-78 (9th Cir. 2005) (en banc). Nor is there any requirement that such facts be found beyond a reasonable doubt. "As a general rule, the preponderance of the evidence standard is the appropriate standard for factual findings used for sentencing." *United States v. Dare*, 425 F.3d 634, 642 (9th Cir. 2005). Because the two-level enhancement did not have a "disproportionate effect on [Clark's] sentence," *id.* (quoting *United States v. Hopper*, 177 F.3d 824, 833 (9th Cir. 1999) (internal quotation marks omitted)), application of the preponderance of the evidence standard was appropriate.

**[5]** However, the record is not clear as to whether the court made any finding regarding the obliterated serial number. The court stated, "You weren't charged with any conduct, other than that of being a felon in possession of a firearm, and one of those firearms has an obliterated serial number, and a factor to be considered is your attempt to wrestle away from the officer at the time you were arrested." Although we do not agree with the government counsel that the district court's statement was a finding regarding the obliterated serial number, a majority of the panel finds that it was not unreasonable for counsel to so interpret it. In the final analysis, however, we disagree that such a finding was made, and we remand for resentencing so that the court can make the appropriate determination.

Sentence **VACATED** and **REMANDED** for resentencing. Because Clark has almost finished serving his sentence, the mandate shall issue forthwith.

KOZINSKI, Circuit Judge, concurring:

While I agree with much in the majority opinion, and concur in the result, I cannot agree with my colleagues that "it was not unreasonable for [government] counsel to so interpret" the district court's statement as a finding of fact. Maj. op. at 7374. In fact, no reasonable lawyer would have tried to pass off the district court's remark as a finding; government counsel was trying to pull a fast one.

To begin with, the district judge did not—and could not have—found the serial number was obliterated because the matter was not submitted to him for decision. While the defendant objected to the PSR's claim that one of the guns in Clark's possession had an obliterated serial number, the on-the-record colloquy on this matter centered entirely on whether Clark had admitted that fact when he pleaded guilty. After hearing from defense counsel, the prosecutor and the probation officer, the district court overruled the objection, apparently on the ground that defendant's admission was sufficient—a proposition the government does not defend on appeal. If the district court had also made an independent finding that the serial number was obliterated, this is the point in the proceedings where one would expect to see it. But no evidence was presented to support such a finding and no one asked the judge to make it. So, of course, he did not.

Which brings up the second reason why the government's claim is patently unreasonable: The statement on which the government relies was made by the district judge much later in the proceedings when he explained the basis of his sentence, *after the defendant had exercised his right to allocution*. Allocution is the penultimate scene in the sentencing drama; it is the defendant's traditional right to plead to the court for leniency after the legal and factual issues affecting sentencing have been resolved. *United States* v. *Gunning*, 401 F.3d 1145, 1148-49 (9th Cir. 2005) (allocution must be allowed on remand after new findings of fact). After allocu-

tion, the only thing left for the court to do is exercise its sentencing discretion. *See* Fed. R. Crim. Pro. 32(i)(4)(A)(ii).

It is unthinkable that a district court would make a finding of fact at that point in the proceedings, as every criminal lawyer well understands. Nor is there any reason to suspect that the careful and experienced district judge upset the expected order here. After all, he had made his ruling based on what he believed was defendant's admission earlier in the proceedings. What possible reason would he have had for making a factual finding, sua sponte, without a factual record, in the midst of pronouncing sentence? To articulate the proposition is to ridicule it.

Finally, one need only read what the district court actually *said*—I mean the full sentence rather than just selected parts of it—to discard the possibility of any reasonable reliance on it as a finding. The court didn't use "I find . . ." or another suitable synonym. Rather, the judge—in articulating the reasons for his sentence—notes that "[y]ou [Clark] weren't charged with any conduct, other than that of being a felon in possession of a firearm, *and one of those firearms has an obliterated serial number . . . .*" Of course, if one quotes only the underscored portion of the sentence, and leaves out the introductory language, one might be able to squeeze out a "finding" by the district court that the serial number was obliterated. But no *reasonable* lawyer would play doctor with quotes in this fashion.

Yet, astonishingly, this is precisely what the government did. In its brief, the government argued that Clark wasn't entitled to a jury finding that the serial number was obliterated because the district court could rely on its own finding to this effect: "Accordingly, the [jury] claim is moot because under *Booker*, the district court could impose any reasonable sentence up to 10 years based on its own finding of sentencing factors under a preponderance standard." This "mootness" argument is necessarily and expressly predicated on the exis-

tence of such a finding by the district judge. Unprofessionally, the government's brief gives no citation to the record where the district court made such a finding.

"Where is the finding?" I—and no doubt my colleagues— wondered while leafing aimlessly through page after page of the record in pursuit of support. Not finding anything, the issue naturally became the subject of questioning at oral argument:

> Q. Was there a finding by the district court that the serial number was obliterated?
>
> A. Yes there was.
>
> Q. Tell me where.
>
> A. Page 229 of the excerpts of record.
>
> Q. What line?
>
> A. Oh, excuse me, page 228 of the excerpts of record.
>
> Q. What line?
>
> A. And that's lines 22 and 23. So there's actually a find—
>
> Q. Could you read me the language on which you're relying?
>
> A. Yes. Line 22. "One of those firearms has an obliterated serial number." Begins on line 22 and ends on line 23.

As the perspicacious reader will already have recognized, the passage on which government counsel relies is the partial

sentence underscored above. Counsel twice attempted to focus the court's attention on lines 22 and 23 of the transcript; yet the court's full sentence—including the crucial introductory phrase "[y]ou weren't charged with any conduct, other than . . . ."—spans lines 21 to 25. When a member of the panel pointed out that the sentence merely articulated what Clark was charged with, counsel insisted:

A.   I believe it's a finding . . . .

And again:

Q.   What the court is saying, "you weren't charged with anything but this." So what he's saying is "you were charged with this." I can't see how you can take a piece of a judge's sentence that lists the charges and characterize it as a finding. . . .

A.   I have to differ with that, your Honor. I think it stands alone . . . .

I don't believe that quoting portions of a sentence while leaving out key qualifiers is reasonable conduct for an attorney of this court. I don't believe that making assertions in a brief regarding disputed factual points, without providing a citation to the record, amounts to reasonable attorney conduct. I don't believe that ignoring the context of statements in the record—the timing, circumstances and purpose—amounts to reasonable conduct. In short, I don't believe that it is appropriate or reasonable for a lawyer to pluck a few words from the middle of a sentence and pretend that they say something very different from what they mean in context. This is true of every lawyer who appears before us, but it goes doubly for lawyers who represent the government in criminal cases. *See United States* v. *Kojayan*, 8 F.3d 1315, 1323 (9th Cir. 1993) ("Prosecutors are subject to constraints and responsibilities that don't apply to other lawyers. While lawyers representing

private parties may—indeed, must—do everything ethically permissible to advance their clients' interests, lawyers representing the government in criminal cases serve truth and justice first." (internal citation omitted)).

I don't understand why my colleagues believe that the government's conduct here was reasonable. I cannot join in the encomium and thereby encourage government lawyers appearing before us to try to get away with more of the same. I therefore respectfully—but decisively—distance myself from that portion of the majority's opinion suggesting that government counsel was reasonable in behaving as he did.