**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0694n.06
Filed: September 21, 2006

**No. 05-5530**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff - Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| JOHN SMITH, | ) | WESTERN DISTRICT OF TENNESSEE |
| | ) | |
| Defendant - Appellant. | ) | |
| | ) | |
| | ) | |
| | ) | |

Before: GUY, SUTTON, ALARCON,[*] Circuit Judges.

PER CURIAM. John Smith appeals his 87-month sentence, contending that the district court used the wrong provision of the sentencing guidelines in calculating his advisory sentencing range. Because the district judge applied the proper guidelines enhancement in sentencing Smith and because he raises no other challenges to his sentence (or conviction), we affirm.

I.

---

[*]The Honorable Arthur L. Alarcón, Senior Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

On July 14, 2004, four adults and two children turned up at an emergency room in Dyersburg, Tennessee, all of them smelling of chemicals, four of them suffering from significant burns. The group consisted of Gregory Lumley, his fiancee Jessica Singletary, John and Debra Smith, and the Smiths' two children, Alexis (age three) and Breanna (age seven). Extensive burns covered Lumley's back and left arm. John Smith had burns on his hands and wrists. Debra Smith exhibited significant burns on both arms and her left leg. Alexis Smith had burns all over her chest, arms and legs. In view of the seriousness of the injuries, medical personnel transported Lumley, Mrs. Smith and the child to Memphis hospitals for further treatment. All three of them survived.

Suspecting that the group's burns stemmed from a methamphetamine cooking incident gone awry, police drove to Lumley's house to investigate. Once there, they noticed hazardous fumes emanating from the mobile home along with the odors of ether and burned human flesh. Just outside the residence, officers discovered a can of camp fuel, a plastic container of muriatic acid, a flame-scorched stainless steel bowl and a burned scrap of children's clothing. Inside the house, investigators found a small stash of marijuana as well as various implements and ingredients typically used in the manufacture and distribution of methamphetamine.

Local drug-task-force agents questioned the four adults separately. All four of them said that they had been heating camping fuel or ether in a stainless steel bowl, that the bowl had caught fire, that Smith had grabbed the flaming bowl and that Smith had either dropped or thrown it, spilling its contents and burning his hands and Lumley's back in the process. The four adults told conflicting stories, however, about how Mrs. Smith and the child ended up with burns.

On September 23, 2004, a grand jury returned a six-count indictment against the Smiths, Lumley and Singletary. The indictment charged all four of them with: (1) conspiracy to manufacture and distribute methamphetamine in violation of 21 U.S.C. § 846; (2) unlawful manufacture of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; (3) possession of certain chemicals, equipment, products and materials with the intent to manufacture methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 843(a)(6) and 18 U.S.C. § 2; (4) possession of pseudoephedrine with the intent to manufacture methamphetamine in violation of 21 U.S.C. § 841(c); and (5) creation of a substantial risk to human life during the manufacture of methamphetamine in violation of 21 U.S.C. § 858 and 18 U.S.C. § 2.

On January 5, 2005, Smith agreed to plead guilty to counts one, three and five. In exchange for Smith's guilty plea, the government agreed to dismiss counts two and four.

At sentencing, the judge adopted the presentence report recommendations, raising Smith's offense level to 30 based on the fact that his actions "created a substantial risk to the lives of minors." JA 93; *see* U.S.S.G. § 2D1.1(b)(6)(C) (current version at § 2D1.1(b)(8)(C)) (providing offense level of 30 for "creat[ing] a substantial risk of harm to the life of a minor" during the manufacture of methamphetamine). Smith objected, contending that he had pleaded guilty only to the elements of the offense, which involved causing "a substantial risk of harm to human life," 21 U.S.C. § 858, not to the life of a minor. Under the guidelines, he argued, creating a substantial risk to human life warranted an offense level of 27, not 30. *See* U.S.S.G. § 2D1.1(b)(6)(B) (current version at § 2D1.1(b)(8)(B)). The judge also subtracted three points for acceptance of responsibility,

concluded that Smith's criminal history placed him in category II, and determined that Smith's guidelines' sentencing range was 78–97 months. The judge sentenced Smith to 87 months.

II.

We review criminal sentences for reasonableness, *United States v. Williams*, 436 F.3d 706, 707 (6th Cir. 2006), looking not just at the length of the sentence imposed but also at "the factors evaluated and the procedures employed by the district court in reaching its sentencing determination," *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005), *cert. denied*, 126 S. Ct. 1110 (2006) . *See United States v. Davis*, --F.3d--, No. 05–3784, 2006 WL 2335240, at \*3 (6th Cir. Aug. 14, 2006) (distinguishing between substantive and procedural reasonableness). A sentence is procedurally unreasonable when a district judge errs in calculating the guidelines sentencing range, fails to consider the factors enumerated in 18 U.S.C. § 3553(a) or deems the guidelines mandatory instead of advisory. *Webb*, 403 F.3d at 383.

Smith raises one procedural objection to his sentence. He contends that the district court mistakenly used § 2D1.1(b)(6)(C) (the "substantial risk of harm to a minor" enhancement) rather than § 2D1.1(b)(6)(B) (the "substantial risk of harm to human life" enhancement) in sentencing him. Determining whether a substantial risk of harm to the life of a human (or, as here, a minor) existed constitutes "a mixed question of law and fact" that we review de novo. *United States v. Layne*, 324 F.3d 464, 468 (6th Cir. 2003).

As an initial matter, it is clear that the district court had authority to make factual findings in determining which enhancement to use. Although *Booker* made substantial changes to the topography of the criminal-sentencing landscape, it did not alter a district judge's ability to make factual determinations concerning which guideline applies in a given case. *See United States v. Coffee*, 434 F.3d 887, 898 (6th Cir. 2006). And we will uphold these factual findings if a preponderance of the evidence supports them. *See United States v. Gates*, --F.3d--, No. 05–1818, 2006 WL 2434996, at *4 (6th Cir. Aug. 24, 2006) (upholding a three-level sentencing enhancement based on a judge's factual conclusions, finding that "judicial fact-finding in sentencing . . .does not violate . . . the Sixth Amendment right to trial by jury"); *United States v. Green*, No. 05–3786, 2006 WL 1307999, at *2 (6th Cir. May 12, 2006) ("Since *Booker*, this court has consistently turned aside constitutional challenges to sentences premised on preponderance-of-the-evidence judicial factfinding.").

It is also clear that even though Smith pleaded guilty only to the charge of creating a substantial risk to human life in the course of manufacturing methamphetamine, 21 U.S.C. § 858, that did not prevent the government from seeking, and the court from imposing, a guideline enhancement based on creating a substantial risk of harm to the life of a minor. That leaves just one question: Did the district court err in determining that a preponderance of the evidence showed that Smith's manufacture of methamphetamine in the company of his two children (ages three and seven) created "a substantial risk of harm to the life of a minor"? U.S.S.G. § 2D1.1(b)(6)(C); *see United States v. Massey*, 79 F. App'x 832, 836 (6th Cir. Oct. 29, 2003) (concluding that a preponderance

of the evidence supported finding a substantial risk of harm to a minor when defendant manufactured methamphetamine in a shed attached to a residence that housed a daycare).

It requires no great leap of logic, it seems to us, to conclude that Smith's attempt to manufacture methamphetamine satisfied the requirements for this enhancement. Not only was he engaged in exceedingly risky behavior (making methamphetamine in the company of two minor children) but those risks came to fruition in this instance. When Smith arrived at the emergency room, his three-year-old daughter was covered in burns. Three of the four adults with her—including Smith—were also burned. The child, her sister and all of the adults smelled like paint thinner or ether. The adults later admitted to investigators that the metal bowl in which they were heating fuel or ether to make methamphetamine burst into flames on the stove. They also admitted that Smith grabbed the fiery bowl and either dropped it or threw it after its scalding contents spilled onto his hands. And they all admitted that the contents of the bowl splashed on Lumley, burning him. Smith, to be sure, does not admit that the flaming liquid burned his wife and daughter. But at the same time he offers no explanation for the injuries to his family—injuries identical in kind and occurring close enough in time to Lumley's that all three were treated in the same hospital visit. In the light cast by these facts, the district court did not err in finding that Smith engaged in conduct that created a substantial risk of harm to the life of a minor.

Attempting to counter this conclusion, Smith claims that this conduct does not fall within this guideline. But we have upheld a § 2D1.1(b)(6)(C) enhancement in a fact pattern far less grave than that presented here. In *United States v. Bivens*, 129 F. App'x 159, 161, 165 (6th Cir. Apr. 8, 2005)

(per curiam), we concluded that the district court properly applied the enhancement to defendants who stored drug-making supplies near their children's room, smoked methamphetamine in their home and housed a methamphetamine lab fifty feet from their residence. Although the defendants claimed that they never manufactured drugs while their children were home, the panel found that the "district court's inferences, based on the court's familiarity from other cases with the methamphetamine production process . . . [were] clearly relevant to the court's determination that the children were placed at risk." *Id.* at 165.

This case, by contrast, requires no such inferences. As the district judge noted, this conduct involved "more than just risk to a minor" from the manufacture of methamphetamine; it involved a minor who "was seriously injured" as a matter of fact. On this record, the court permissibly invoked § 2D1.1(b)(6)(C) in calculating Smith's sentencing range.

III.

For these reasons, we affirm.