United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 6, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 04-40151
_____

UNITED STATES OF AMERICA

                              Plaintiff-Appellee,

versus

DAVIS WAYNE CARNEY, also known as "God"

                              Defendant-Appellant.

--------------------
Appeal from the United States District Court
for the Eastern District of Texas, Sherman
4:03-CR-84-1
--------------------

Before REAVLEY, BENAVIDES, and PRADO, Circuit Judges.

PER CURIAM:[*]

Appellant Davis Wayne Carney ("Carney") appeals the district court's determination that the six-level enhancement for causing a substantial risk of harm to the life of a minor while producing methamphetamine, pursuant to U.S.S.G. § 2D1.1(b)(5)(C), applied to his conduct. We reverse and remand for further proceedings consistent with this opinion.

## I.  INTRODUCTION

---

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Carney pled guilty to count 1 and count 8 of a 21-count indictment against him and 17 other co-defendants. Count 1 charged Carney with conspiracy to manufacture, distribute or possess with intent to manufacture, distribute or dispense 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 846. Count 8 charged Carney with knowingly using, carrying or possessing a firearm during, in relation to, and in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1).

The district court found that Carney's total offense level was 35, representing an initial base offense level of 32, with a three-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) and (b), and a six-level enhancement for causing a substantial risk of harm to the life of a minor pursuant to U.S.S.G. § 2D1.1(b)(5)(C).

## II. STATEMENT OF THE FACTS

Carney admits that he illegally manufactured methamphetamine ("meth"). At the time of his arrest, on May 24, 2001, he was living outside of Whitesboro, Texas, along with his wife and his four young children. When the police arrived on that day to execute a search warrant and to arrest him, Carney, after seeing the police, grabbed his three-year-old son and entered his storage building/shed. Moments later, Carney emerged without a fight and surrendered to police.

The storage shed contained paraphernalia used to "cook" methamphetamine, including two Hydrogen Chloride ("HCl") generators inside of a trash bag, a jar containing a cloudy liquid (later determined to be methamphetamine in the later stages of production), 3.3 grams of methamphetamine, and tools or equipment commonly used for the production of methamphetamine. The police also found two rifles, a revolver and a part of a semiautomatic or automatic pistol in the shed.

An HCl generator emits HCl gas, which can be fatal to humans when inhaled in concentrated amounts. A "generator" is a bottle containing sulfuric acid and salt, with a hose that emits gas used to produce powder methamphetamine. The HCl generators had been used, at a different location, within the previous 24 hours and had been "capped off" before being placed in a trash bag for disposal. Nevertheless, Sergeant Whitney, the police officer who initially searched the shed, testified that the two HCl generators were still reacting and emitting some gas, even though they had been "capped off."

Additionally, Sergeant Whitney testified that the jar found in the shed contained meth that was crystallizing. At that stage of production, a dangerous gas is generated in the air. Furthermore, he testified that the dangerous gas emitted during meth production can permeate walls and textiles and cause injury as much as a month later.

When he searched the shed, Sergeant Whitney wore an

artificial personal respirator for precaution because the odor of HCl gas was present.  However, the police did not conduct any tests to determine the concentration of HCl gas in the air inside of the shed, nor was there any testimony as to the degree of danger or type of harm that existed in the shed.

### III. DISCUSSION

A. Standard of Review

We review legal conclusions related to the application of the sentencing guidelines *de novo*.  *United States v. Huerta*, 182 F.3d 361, 364 (5th Cir. 1999).

B.  Discussion

Section 2D1.1(b)(5)(C) of the United States Sentencing Guidelines provides for an increase of six offense levels when the defendant engaged in the manufacture of methamphetamine and created a substantial risk of harm to the life of a minor.[1]

Carney argues that the phrase "harm to the life of a minor" contemplates serious harm, not just any harm.  The district court found, and the government argues on appeal, that the words "to the life" in the guidelines are inconsequential surplusage, and that the enhancement applies whenever the manufacture of methamphetamine creates a substantial risk of any harm to a minor.

---

[1] "If the offense (i) involved the manufacture of amphetamine or methamphetamine; and (ii) created a substantial risk of harm to the life of a minor or an incompetent, increase by 6 levels." U.S.S.G. § 2D1.1(b)(5)(C).

At the sentencing hearing, the district judge said:

> ... it appears to me that it requires simply a risk of harm. Not a risk to the life of the minor, but a risk of harm. I don't know why they put the words "to the life." They could have just said "substantial risk of harm to a minor."

The district court erred by simply dismissing the words "to the life" when interpreting the guideline. Congress chose these specific words and we must assume that Congress and the Sentencing Commission included the same for a reason.

When construing a criminal statute, we "must follow the plain and unambiguous meaning of the statutory language." *United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004). Moreover, "a statute must, if possible, be construed in such fashion that every word has some operative effect." *Id*. (citations omitted).

If Congress had intended for § 2D1.1(b)(5)(C) to apply whenever the manufacture of methamphetamine caused a substantial risk of any type of harm to a minor, then it would have passed a law that said "substantial risk of harm to a minor." However, Congress did not do so. Instead, it passed a law that requires a substantial risk of harm to the life of a minor.[2] The inclusion of the words "to the life" indicates that Congress wanted to punish situations in which children faced a substantial risk of serious harm, as opposed to any type of harm. Harm "to the life of a minor" suggests a type of harm that could cause death or a

---

[2] Section 3612(a)(2)(B) of the Methamphetamine Anti-Proliferation Act of 2000, Pub. L. 106-310.

serious injury that would adversely affect the life of a minor.

We also note that the application notes for § 2D1.1(b)(5)(C) include four factors that a court "shall" apply when determining if the six-level enhancement applies to a defendant's conduct. U.S.S.G. § 2D1.1, cmt. n. 20(A). The district court in the instant case did not consider these factors with respect to Carney's conduct. It was error to not do so, and on remand the district court should weigh the factors provided in the application notes.

## IV. Conclusion

The district court erred by using an incorrect standard to determine if the six-level enhancement in § 2D1.1(b)(5)(C) applied to Carney's conduct. The district court required a substantial risk of any type of harm, whereas the language of the guideline provision actually requires a "substantial risk of harm to the life of a minor." U.S.S.G. § 2D1.1(b)(5)(C).[3]

Accordingly, for the foregoing reasons, the judgment of the district court is REVERSED and the case REMANDED for further

---

[3] The legislative history for the Methamphetamine Anti-Proliferation Act of 2000 indicates that Congress was concerned with more serious exposure to meth laboratories than that which occurred in the instant case. The House Judiciary Committee Report states: "More disturbing is that most of these laboratories are situated in residences, motels, trailers, and vans, and often times are operated in the presence of children." H.R. Rep. 106-878 at 22 (Sept. 21, 2000). The Report also says: "Law enforcement officials cite frequent discovery of children living and playing among toxic and volatile chemicals in home-based amphetamine and methamphetamine laboratories." *Id*. at 27. The district court may find this legislative history to be helpful when considering if the six-level enhancement should apply to Carney's conduct.

proceedings consistent with this Court's opinion.