**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ANTHONY DELLIS SPENCER, also
known as Nikko,

    Defendant - Appellant.

No. 04-4170
(D. Utah)
(D.Ct. No. 03-CR-182-02-TC)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **O'BRIEN**, and **TYMKOVICH**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

Anthony Dellis Spencer pled guilty to attempted manufacture of

---

[*] This order and judgment is not binding precedent except under the doctrines of
law of the case, *res judicata* and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

methamphetamine in violation of 21 U.S.C. § 841(a)(1) and § 846. No specific

drug quantity was alleged in the indictment and his guilty plea did not include an

admitted drug quantity. He was sentenced to 110 months imprisonment based on

the district court's finding by a preponderance of the evidence that the violation

involved a drug quantity of 21.25 grams of methamphetamine. Spencer appealed,

contending his sentence based on the judge-determined drug quantity is contrary

to the rule announced in *Blakely v. Washington*, 542 U.S. 296 (2004).[1] During

briefing, the Supreme Court issued its opinion in *United States v. Booker*, ___

U.S. ___, 125 S.Ct. 738 (2005).[2] Exercising jurisdiction under 28 U.S.C. § 1291,

we REMAND the case to the district court for resentencing consistent with

*Booker*.

**Background**

On October 25, 2000, police discovered a clandestine methamphetamine

laboratory while executing a search warrant at a home in Sandy, Utah, owned by

Ron Pace. Further investigation revealed that at least two of the home's

residents, Spencer and Russell Robertson, were responsible for the lab.[3] Both

---

[1] In *Blakely*, the Supreme Court ruled that a sentence enhancement based upon judge found facts can violate a defendant's Sixth Amendment rights.

[2] We apply both *Blakely* and *Booker* to this appeal. *See United States v. Clifton,* 406 F.3d 1173, 1175 n.1 (10th Cir. 2005) ("We must apply the holdings in *Blakely* and *Booker* to all cases in which a defendant properly raised an issue under either case.").

[3] The other residents of the home were Ron Pace, Mindy Pace and Roger Johnson.

were later indicted. In particular, Spencer was charged with two counts of possession of precursor chemicals (Counts I and II), possession of methamphetamine with intent to distribute (Count III) and attempted manufacture of methamphetamine (Count IV). He pled guilty to Count IV on January 14, 2004.

The presentence report (PSR) listed numerous items discovered during a search of the house, including an empty bottle of iodine crystals in the dresser in a child's bedroom. The PSR concluded, based on the presence of roughly 2.9 grams of methamphetamine[4] and several precursor chemicals discovered at the residence, Spencer was subject to an offense level of 20. The PSR also found that chemicals in the lab presented a substantial risk of harm to at least one child and therefore, Spencer's base offense level should be increased to 30. *See* USSG § 2D1.1(b)(5)(C). After reducing the offense level by 3 for acceptance of responsibility, the total recommended offense level was 27. *See* USSG § 3E1.1. The PSR placed Spencer's criminal history at category VI.

The district court held an evidentiary hearing to address Spencer's various objections to the PSR. Officer Jeff Payne of the Salt Lake City Police Department, the government's drug expert, testified he did not "assist" in the

---

[4]The 2.9 grams of methamphetamine were the amounts found in the possession of two other residents, Ron Pace and Russell Robertson, at the time of the search.

investigation of the lab but his opinions were based on a review of the files. (R. Vol. II at 164). When asked, "[c]an you tell the court how much crystal *iodine* a two ounce bottle would produce?" he responded that the empty two-ounce bottle of iodine discovered at the residence could have been used to produce three-fourths to one ounce of "finished product."[5] (R. Vol. II at 177.) At the close of the hearing, the district court determined that there was no evidence to support the enhancement for endangering a child, but concluded the parties would need a transcript of the hearing to submit further briefing on other issues, including the appropriate drug quantity to establish the base offense level.

In the government's brief, submitted prior to sentencing, the government asserted that Officer Payne testified "the two-ounce bottle of iodine (56.6 grams) found in the children's room would have produced approximately three-quarters of an ounce of methamphetamine" and that this evidence was unrefuted. (R. Vol. 1, Doc. 132 at 1). In response, Spencer's sentencing memorandum reiterated the question asked by the government and averred Officer Payne did not "clarify what he meant by 'finished product,' whether he meant crystal idodine, as the prosecutor asked him, or whether he meant actual methamphetamine or a mixture."[6] (R. Vol. 1, Doc. 136 at 4).

---

[5] Three quarters of an ounce is approximately 21.25 grams of methamphetamine.

[6] The sentencing guidelines discriminate between a "mixture or substance" and "actual" quantities of a controlled substance. The term "actual" means the "weight of a

At sentencing, Spencer preserved his *Blakely* objection and argued the amount of methamphetamine attributed to the empty iodine bottle was purely speculative in the absence of any evidence as to where the bottle came from or how much iodine it contained when it arrived at the residence. The government again insisted that the two ounce bottle would yield "21.225 grams actual." (Supp. Appx. at 3.) The court responded, "Actual. That just comes from the iodine?" (Id.) The government answered, "Right." (Id.) As a result, the court rejected Spencer's position and based its sentence on the 21.25 grams of actual methamphetamine that could have been produced had the empty bottle been filled to capacity with two ounces of iodine.

**Discussion**

In *Booker,* the Supreme Court applied its opinion in *Blakely v. Washington,* 542 U.S. 296 (2004), to the federal sentencing guidelines, holding that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker,* 125 S.Ct. at 756. Justice Breyer's remedial opinion in *Booker*

---

controlled substance, itself, contained in the mixture or substance. For example, a mixture weighing 10 grams containing PCP at 50% purity contains 5 grams of PCP (actual)." USSG § 2D1.1 Notes (B). The difference here is 21 grams of a mixture results in an offense level of 20 under USSG § 2D1.1(10), while 21 grams methamphetamine (actual) result in an offense level of 28. *See* USSG § 2D1.1(6).

then excised portions of the Sentencing Reform Act of 1984, codified at 18 U.S.C. § 3551 et seq., thus rendering the sentencing guidelines advisory. *Id.* at 757. Accordingly, prior to *Booker,* a district court could potentially make two distinct types of error:

> First, a court could err by relying upon judge-found facts, other than those of prior convictions, to enhance a defendant's sentence mandatorily. As *Booker* makes clear, the Sixth Amendment prohibits this practice. . . . Second, a sentencing court could err by applying the Guidelines in a mandatory fashion, as opposed to a discretionary fashion, even though the resulting sentence was calculated solely upon facts that were admitted by the defendant, found by the jury, or based upon the fact of a prior conviction. While this type of sentence does not violate the Sixth Amendment, such a sentence is nonetheless impermissible because the Court severed the portion of the Sentencing Reform Act that required the mandatory application of the Guidelines.

*United States v. Gonzalez-Huerta,* 403 F.3d 727, 731-32 (10th Cir. 2005) (en banc) (internal citations omitted).

We need not reach the non-constitutional error because the district court violated the Sixth Amendment by making findings of fact that increased Spencer's mandatory sentencing range. *Id.* at 748-49. Thus, reversal is required unless the error was harmless. *United States v. Windrix,* 405 F.3d 1146, 1158 (10th Cir. 2005). Harmless-error review stems from Federal Rule of Criminal Procedure 52(a), which provides that "[a]ny error . . . that does not affect substantial rights must be disregarded." Clearly, the error here was not harmless. Spencer's base offense level, absent any increase based on judicial fact-finding,

was 12. With a base offense level of 12 and a criminal history category of VI, the applicable guideline range is nine to fifteen months imprisonment, rather than the 110 months currently imposed. Further, the government "concedes that the record contains no evidence to support the conclusion that Spencer produced at least 20 grams of *actual* methamphetamine with the two-ounce bottle of iodine." (Appellee's Br. at 9-10.) Therefore, the government requests we remand for resentencing with an opportunity to present new evidence.

Spencer disagrees, contending that our remand should be limited to the record previously developed in the district court. He persuasively argues that the situation here is very similar to that in *United States v. Campbell*, 372 F.3d 1179 (10th Cir. 2004). In *Campbell*, the government conceded that it did not allege or prove an essential element to support a sentence enhancement. 372 F.3d at 1182. In the order for remand, we exercised our discretion under 18 U.S.C. § 3742(f)(1) and limited resentencing to the existing record. *Id*. at 1183. We did so because even though the "[d]efendant alerted the government to the deficiency in its evidence, the government did not seek to cure the deficiency, and instead made patently erroneous legal arguments as to why such proof was not needed." *Id*. In light of that record, we declined "to give [the government] a second bite at the apple." *Id*.

Here, Spencer alerted the government to the absence of any evidence to

establish the empty iodine bottle produced "at least 20 grams but less than 35 grams of methamphetamine (actual)" as required to reach its alleged base offense level. Despite such notice and a transcript of the evidentiary hearing prior to sentencing, the government did not alert the district court to any problem nor did it attempt to supplement the record, even though the appropriate drug quantity was one of the primary issues at the upcoming sentencing hearing. Instead, it continued to argue to the court that Officer Payne's testimony had established its burden of proof. As noted above, the government now admits Spencer was correct in his claim that no evidence was presented to establish an actual quantity of methamphetamine. Given the clear warning provided by Spencer prior to sentencing and the government's opportunities to rectify the situation, we must agree that the situation is strikingly similar to that of *Campbell*. Therefore, we follow its example and decline to "invite an open season for the government to make the record that it failed to make in the first instance." *Id., quoting United States v. Torres,* 182 F.3d 1156, 1164 (10th Cir.1999).

**Conclusion**

For the foregoing reasons, we REMAND for resentencing in accordance with *Booker*, but on the record as it now stands.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge

-8-