[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 16, 2006
THOMAS K. KAHN
CLERK

No. 05-15455
Non-Argument Calendar

_____

D. C. Docket No. 05-00118-CR-CG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHN WEEKS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

**(May 16, 2006)**

Before BIRCH, BLACK and BARKETT, Circuit Judges.

PER CURIAM:

John R. Weeks appeals his 240-month sentence for possession with intent to

distribute 25 grams or more of a substance containing methamphetamine, in violation of 21 U.S.C. § 841(a)(1). We find no error in the district court's enhancement of his sentence by six levels for creating a substantial risk to the life of a minor, and we find that the sentence imposed was not unreasonable. Accordingly, we AFFIRM.

## I. BACKGROUND

A federal grand jury returned a six-count superceding indictment alleging that Weeks committed the following offenses: conspired to distribute more than 500 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846, ("Count 1"); manufactured approximately 213 grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), ("Count 2"); possessed approximately 213 grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), ("Count 3"); was a felon in possession of several firearms, in violation of 18 U.S.C. § 922(g)(9), ("Count 4"); knowingly possessed an unregistered shotgun with both barrels cut shorter than permitted by law, in violation of 26 U.S.C. § 5861(d), ("Count 5"); and possessed 25 grams of a substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a), ("Count 6"). R1-15. Weeks pled guilty to Count 6 without a plea agreement.[1]

---

[1]After sentencing, Counts 1-5 were dismissed. R4 at 156.

2

The presentence investigation by the probation office revealed the following events leading up to Weeks's conviction. In early November 2004, officers with the Violent Crimes Task Force and the FBI executed a search warrant at Weeks's residence, a mobile home in a trailer park. Weeks, his wife, and their five children were all present. Weeks was found lying on the bed with an 18-month-old child. In the bedroom, officers also found methamphetamine powder scattered on the bedspread, a bag of marijuana next to the bed, a loaded pistol on a shelf, and a quantity of drug paraphernalia. Elsewhere in the house, officers discovered a variety of other guns, tools for ingesting illegal drugs, and materials for making and selling drugs, including: (1) a scale of the type commonly used to weigh drugs, (2) ammonia nitrate, (3) coffee filters, (4) plastic tubing, and (5) a plastic container containing a plastic jar that produced a strong chemical odor and contained 213.8 grams of a methamphetamine-based solution. The solution was found in the enclosed back porch area of the trailer.

In mid-February 2005, state police officers and FBI agents executed another search warrant at Weeks's house. As the officers arrived on the scene, they observed Weeks throw down a purple Crown Royal bag, a package of cigarettes, and a clear plastic bag. The officers found 25 grams of methamphetamine in the plastic bag, 3.5 grams of crystal methamphetamine in the cigarette package, and

3

partially burnt cigarettes containing marijuana in the Crown Royal bag.

The probation office also interviewed a man who had known Weeks in 2000 and who agreed to testify at sentencing. This witness received two grams of methamphetamine per week during one month in 2000. It is estimated that Weeks produced four to six ounces of methamphetamine per week during this time. A man named William Sheffield, who later testified at sentencing, had cooked methamphetamine with Weeks in 2003. The probation office reported that Sheffield indicated that he and Weeks manufactured between 1.5 and 2.0 ounces of methamphetamine approximately three times a week for approximately six months. All of these facts were included in the presentence investigation report prepared for Weeks's sentencing.

Based on the recovered methamphetamine and the interviews of witnesses, the probation office calculated that Weeks was accountable for 2.53 kilograms of methamphetamine. This quantity gave Weeks a base offense level of 34. Two levels were added for possessing dangerous weapons pursuant to U.S.S.G. § 2D1.1(b)(1) (2004). Six levels were added because the offense involved the manufacture of methamphetamine and created a substantial risk of harm to the life of a minor pursuant to § 2D1.1(b)(6)(C). Three levels were subtracted for acceptance of responsibility pursuant to § 3E1.1. This left Weeks with a total

4

offense level of 39. Based on an offense level of 39 and a criminal history of I, Weeks's Guidelines range was 262 to 327 months. The statutory maximum term of imprisonment, however, was only 240 months. 21 U.S.C. § 841(b)(1)(C).

Weeks disputed the drug quantity calculations in the presentence report and contended that he should only be held accountable for the drugs in the cigarette package and the Crown Royal bag. R1-35 at 1-2. He also objected to the enhancement for possession of a dangerous weapon, and the enhancement for creating a substantial risk to a minor, denying that either enhancement was applicable to his case. Id. at 2, 3. Weeks did not, however, object to any facts in the report, aside from drug quantities. See generally id.

At sentencing, the government produced testimony from a number of officers who had participated in the search of Weeks's house, as well as from numerous people who had purchased methamphetamine from Weeks. See generally R4 at 5-103 (testimony of Robert K. Thornton, William Keith Sheffield, Jeremy Shane Duboise, Jerry Ripple, and Deigo Tobon). This testimony generally confirmed the facts uncovered by the probation office investigation. See id. Further, Officer Thornton testified that he had discovered the container of methamphetamine-based solution, that it had been "less than 10 feet" from the children in the residence, that the solution was methamphetamine oil, which was a

5

"product stage in the process of manufacturing methamphetamine," and that it smelled strongly of ammonia. Id. at 17. Thornton further testified that, during the second search, officers found three spots indicating past methamphetamine cooks within fifty yards of the trailer. Id. at 26. Finally, Thornton clarified that he had erroneously reported his interview of Sheffield, and that Weeks had done two to three methamphetamine cooks per month rather than per week. Id. at 28.

Sheffield confirmed this, testifying that he had cooked methamphetamine with Weeks approximately three or four times per month during a six month period in 2003. Id. at 52. He also stated that the cooking took place in the woods behind Weeks's trailer, about 200-400 yards away from it. Id. at 49. A third witness, Jeremy Shane DuBoise, testified that he had stopped purchasing methamphetamine from Weeks when, during a sale, he witnessed Weeks offer a joint to his five-year-old child. Id. at 77-78.

Based on the testimony, the district court changed the probation office's drug calculations, arriving at a base offense level of 32. Id. at 110-11. The district court overruled Weeks's objections as to the weapons enhancement and the creation of a substantial risk to a minor. Id. at 111-12. More specifically, the court found that "it's clear that there was a substantial risk of harm to the life of a minor, and more than one minor in this case." Id. at 112. Based on these findings, the

6

district court set Weeks's total offense level at 37, with a criminal history category of I. The district court sentenced Weeks to the statutory maximum sentence of 240 months, which fell only at the mid-level of the Guidelines range. In imposing the sentence, the district court explicitly considered "the statutory purposes of sentencing," the calculated Guidelines range in Weeks's case, the advisory nature of the Guidelines, the quantity of methamphetamine involved, and the proximity of Weeks's children to his methamphetamine dealings. Id. at 152.

On appeal, Weeks argues that the district court unreasonably sentenced him, in violation of United States v. Booker,[2] because it erroneously applied the U.S.S.G. § 2D1.1(b)(6)(C) enhancement for creating a substantial risk of harm to a minor.

## II. DISCUSSION

We review the district court's application of the Sentencing Guidelines de novo, and its factual findings for clear error. United States v. Crawford, 407 F.3d 1174, 1177, 1178 (11th Cir. 2005). A defendant's failure to dispute facts contained in a presentence investigation report operates as an admission of those facts for Booker purposes. See United States v. Shelton, 400 F.3d 1325, 1330 (11th Cir. 2005) .

---

[2]543 U.S. 220, 125 S. Ct. 738 (2005)

Pursuant to the Supreme Court's instructions in <u>Booker</u>, we review a district court's sentence, imposed after consulting the Guidelines and considering the factors set forth at 18 U.S.C. § 3553(a), for unreasonableness. <u>Booker</u>, 543 U.S. at 264, 125 S. Ct. at 767. In assessing the reasonableness of a sentence, a district court should consider the nature and circumstances of the offense, the history and characteristics of the defendant, the need for adequate deterrence and protection of the public, the pertinent Sentencing Commission policy statements, and the need to avoid unwarranted sentencing disparities. <u>See</u> 18 U.S.C. § 3553(a)(1)-(7). Further, we have held that a sentence within the advisory Guidelines range is not <u>per se</u> reasonable because to say that it is would be to ignore <u>Booker</u>'s requirement that the other § 3553(a) factors be considered. <u>United States v. Talley</u>, 431 F.3d 784, 786 (11th Cir. 2005) (per curiam). We have also noted that the reasonableness review is "deferential" and focuses on whether the sentence imposed "achieve[s] the purposes of sentencing as stated in section 3553(a)." <u>Id.</u> at 788.

The Sentencing Guidelines provide that "[i]f the offense (i) involved the manufacture of amphetamine or methamphetamine; and (ii) created a substantial risk of harm to the life of a minor or an incompetent, increase by <u>6</u> levels." U.S.S.G. § 2D1.1(b)(6)(C). The commentary to § 2D1.1 provides certain factors

that a court must consider to determine whether the offense created a substantial risk of harm to human life or the environment:

> (i) The quantity of any chemicals or hazardous or toxic substances found at the laboratory, and the manner in which the chemicals or substances were stored.

> (ii) The manner in which hazardous or toxic substances were disposed, and the likelihood of release into the environment of hazardous or toxic substances.

> (iii) The duration of the offense, or the extent of the manufacturing operation.

> (iv) The location of the laboratory (e.g., whether the laboratory is located in a residential neighborhood or a remote area), and the number of human lives placed at substantial risk of harm.

U.S.S.G. § 2D1.1, comment. (n.20(A)).  Finally, "[a]lthough the district court is not required to identify a specific minor, it must still make a finding that the defendant's actions placed a minor at risk."  United States v. Florence, 333 F.3d 1290, 1293 (11th Cir. 2003).

Section 2D1.1(b)(6)(C) of the Sentencing Guidelines merely requires that the offense of conviction involve the manufacture of methamphetamine and create a substantial risk of harm to the life of a minor or incompetent.  U.S.S.G. § 2D1.1(b)(6)(C).  It does not state that the process of manufacturing methamphetamine must be the cause of the substantial risk of harm at issue.  See id.  Moreover, although application note 20 states that a district court shall consider

9

factors related to the production of methamphetamine, it does not state that a district court may not consider other ways in which the offense of conviction created a substantial risk of harm to the life of a minor, and Weeks cites no authority interpreting the application note in this manner. See U.S.S.G. § 2D1.1, comment. (n.20(A)).

Weeks's offense was possession with intent to distribute methamphetamine. Weeks has conceded that his offense involved the manufacture of methamphetamine. See Appellant's Br. at 13. Weeks did not object to the facts in the presentence report, which described how he was found asleep on a bed with an 18-month old child and 1.8 grams of methamphetamine powder scattered on the bedspread, how numerous "cooks" had taken place in the woods behind his trailer, and how his five children lived in the trailer with him. Based on these admitted facts and the testimony at sentencing concerning Weeks's dealing and using drugs around his children, and the level of care he took in storing drugs and other chemicals, the district court did not clearly err in finding that Weeks had created a substantial risk of harm to the life of a minor or in enhancing Weeks's Guidelines range based upon that finding.

Finally, based on the record, the district court's sentence was not unreasonable. The court acknowledged the statutory purposes of sentencing and

the advisory nature of the guidelines, and considered the quantity of methamphetamine Weeks was responsible for, and his history of cooking methamphetamine and dealing and using it around his children. Thus, the sentence was reasoned and contained references to several of the § 3553(a) factors, such as the nature and circumstances of the offense and the need for the sentence to reflect the seriousness of the offense. Accordingly, we find Weeks's sentence is not unreasonable. See United States v. Robles, 408 F.3d 1324, 1328 (11th Cir. 2005) (per curiam) (noting that, in reviewing for reasonableness, this we do "not expect the district court in every case to conduct an accounting of every 3553(a) factor . . . and expound upon how each factor played a role in its sentencing decision").

## III. CONCLUSION

Weeks appeals his 240-month sentence for possession with intent to distribute 25 grams or more of a substance containing methamphetamine. Because the district court did not err in enhancing Weeks's sentence pursuant to U.S.S.G. § 2D1.1(b)(6)(C) and because we find that the sentence imposed was not unreasonable, we **AFFIRM**.

11