NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0254n.06
Filed: April 5, 2007

**No. 05-5375**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF TENNESSEE |
| ROBERT GLEN BRAIN, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

Before: DAUGHTREY and GILMAN, Circuit Judges, and RUSSELL,[*] District Judge.

**PER CURIAM.** The defendant, Robert Glen Brain, appeals the sentence imposed by the district court following his guilty plea to one count of a seven-count indictment charging him with attempted manufacture of methamphetamine and possession of equipment, chemicals, products and materials used to manufacture methamphetamine. Brain claims on appeal that he should not have received a six-level increase in his base offense level for creating a substantial risk of harm to the life of a minor, under United States Sentencing Guideline § 2D1.1(b)(6)(C) (2004). He also challenges the validity of the ratio set out in the guidelines for converting the chemical pseudoephedrine to

---

[*]The Hon. Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation.

methamphetamine, contending that the Sentencing Commission's promulgation of the controlling guideline was arbitrary and capricious.

The latter question, addressing methods established by Congress to estimate the amount of methamphetamine that can be manufactured from certain precursor chemicals, is now foreclosed by our recent ruling in *United States v. Martin*, 438 F.3d 621, 639 (6th Cir. 2006), in which we upheld the validity of the conversion ratio promulgated by the Sentencing Commission in response to Pub. L. No. 106-310, § 3651(b)(2), 114 Stat. 1238-39 (2000), against a challenge raising the same issue as the defendant raises in this case. The former question, concerning the enhancement under the sentencing guidelines for substantial risk of harm, is not so easily resolved, however, and requires a review of the facts before the district court at sentencing.

## **FACTUAL AND PROCEDURAL BACKGROUND**

The defendant's association with the manufacture of methamphetamine over a period of at least eight months is apparent on the record. On October 4, 2002, he was present when officers searched the premises of James Holt and found a methamphetamine lab in operation. In his plea agreement in this case, the defendant admitted his involvement in that methamphetamine manufacturing operation. On February 27, 2003, local police officers executed a search warrant at the defendant's residence and

seized numerous chemicals and other items used in the manufacture of methamphetamine, including hydrogen peroxide, Red Devil lye, and a propane torch. When officers returned to the defendant's residence on March 7, 2003, to execute an arrest warrant issued as a result of the evidence seized during the February 27 search, one of them detected an odor associated with the operation of a methamphetamine lab inside the house and asked the defendant for permission to search the premises once again. He refused to give consent, and the officers secured the premises to prevent the destruction of evidence until a search warrant could be secured.

When they executed the warrant, they found evidence that a methamphetamine lab was being operated at the defendant's home and seized quantities of hydrogen peroxide, liquid acetone, more Red Devil lye, a gallon of Coleman fuel, glassware and syringes, a coffee pot and a blender containing a white residue, and other materials and chemicals used in the manufacture of methamphetamine. Also present at the house was the defendant's 17-year-old son, Bobby, who commented to officers "that he knew that it was a matter of time before the police would catch them" and that "he [had] sold his speakers because he was afraid that [officers conducting a search] would seize them."

The probation officer who prepared the pre-sentence report recommended that the defendant's base offense level be increased under U.S.S.G. § 2D1.1(b)(6)(C) (2004), which provides: "If the offense (i) involved the manufacture of amphetamine or methamphetamine; and (ii) created a substantial risk of harm to the life of a minor or an

incompetent, increase by 6 levels" to a minimum level of 30. The district court found that

this specific offense characteristic was applicable, ruling as follows:

> I have considered the factors . . . about the substantial risk of harm, the testimony here was that there was quite a bit of material in here, two bottles of hydrogen peroxide, Red Devil lye, syringes, white residue on pots, acetone, a lot of chemicals and materials, toxic substances used to manufacture methamphetamine. Everything was sitting all over the place, residue in pots and jars and pans. It's obvious that methamphetamine had been manufactured in that location and in the not too distant past, because the fumes were there. The fumes themselves are very dangerous to life and limb. The location was in the defendant's house.
>
> This was his son. . . . [W]hat his son said gives a good indication that he had been around when, during the manufacturing process at some point or the other. So I find that the government has carried its burden of proving by a preponderance of the evidence that there was a substantial risk of harm to this minor.      *   *   *   *   *
>
> Existence of the chemicals themselves, the presence of the child in the presence of those fumes [ ] in itself poses a substantial danger. And, also, the fact that I think its very likely that the manufacturing process took place in the presence of the minor.

The defendant now appeals the district court's application of 2D1.1(b)(6)(C) to enhance

his sentence of 130 months.

## DISCUSSION

## The Standard of Review

On appeal, the government asks us to review the district court's decision to increase

the defendant's offense level under the deferential standard set out by the Supreme Court

in *Buford v. United States*, 532 U.S. 59 (2001). There, the Court noted that a reviewing

court is required to "give due deference to the district court's application of the [sentencing] guidelines to the facts," as required by 18 U.S.C. § 3742(e), but also observed the "the 'deference that is due depends on the nature of the question presented.'" *Id.* at 63 (quoting *Koon v. United States*, 518 U.S. 81, 98 (1996)). In *Buford*, the Court held that resolution of the question decided by the district court, *i.e.*, whether, based on a state court record, there had been a "functional consolidation" of the defendant's prior convictions for purposes of determining his status as a career criminal, was entitled to deference on appeal "[i]n light of the fact-bound nature of the legal decision, the comparatively greater expertise of the District Court [in making this particular kind of determination], and the limited value of uniform court of appeals precedent" in deciding such questions of state procedural law. *Id.* at 66.

We conclude that *Buford* is inapplicable here. In the first place, the Supreme Court's remedial ruling in *United States v. Booker* "severed and excised" section 3742(e) from the Sentencing Reform Act, along with § 3742(a), in order to make the remainder of the Act constitutional. 543 U.S. 220, 245, 259 (2005). Moreover, we have held in a post-*Booker* decision that the specific issue raised in this case, involving risk of harm from the manufacture of methamphetamine, is a mixed question of law and fact subject to *de novo* review. *See United States v. Davidson*, 409 F.3d 304, 310 (6th Cir. 2005) (citing *United States v. Layne*, 324 F.3f 464, 468 (6th Cir. 2003)); *see also United States v. Humphrey*, 279 F.3d 372, 379 n.4 (6th Cir. 2002) (using the *de novo* standard in reviewing an application of the guidelines and distinguishing the case from *Buford*). Hence, we reject the

government's contention that deference is "due" in this case and undertake a *de novo* review of the district court's decision.

**The § 2D1.1(b) Enhancement**

On appeal, the defendant takes issue with the basis for the substantial-risk-of-harm enhancement, contending that the officers executing the warrant did not actually observe methamphetamine being manufactured at the time they also saw the defendant's son in the house. But this argument overlooks the fact that when officers first entered the house, they detected the odor of methamphetamine being processed, which observation formed the basis for the issuance of the search warrant. That the manufacturing process was no longer in operation when they returned with the warrant does not diminish what was obviously a continuing threat to anyone on the premises, including the defendant's minor child.

In order to see this clearly, one need only compare the facts of this case to the situation in another recent methamphetamine manufacturing opinion from this court, *United States v. Layne*, 324 F.3d 464 (6th Cir.), *cert. denied*, 540 U.S. 888 (2003). In *Layne*, we traced the legislative history of the Methamphetamine Anti-Proliferation Act of 2000, which recognizes, among other things, the hazards associated with methamphetamine's dangerous manufacturing process and the inherent risk of harm that it poses to human life.

*Id.* at 468. Our analysis in *Layne* focused on the four factors that are set out in Application

Note 21(A) to § 2D1.1 for consideration in the determination of the substantial-risk-of-harm

enhancement, including:

> (i) The quantity of any chemicals or hazardous toxic substances found at the laboratory, or the manner in which the chemicals or substances were stored.
>
> (ii) The manner in which hazardous or toxic substances were disposed, or the likelihood of release into the environment of hazardous or toxic substances.
>
> (iii) The duration of the offense, or the extent of the manufacturing operation.
>
> (iv) The location of the . . . methamphetamine laboratory (*e.g.*, in a residential neighborhood or a remote area) and the number of human lives placed at substantial risk of harm.[1]

*Id*. at 469 (internal citation omitted).

The substantial-risk-of-harm enhancement in *Layne* was imposed for risk to human

life, as provided in § 2D1.1(b)(5)(B), a specific characteristic that results in an increase of

three levels rather than the six-level increase mandated by § 2D1.1(b)(6)(C) if the risk is to

a minor, as it is here. Pertinent to our analysis in this case is the following observation in

the *Layne* opinion concerning the manufacture of methamphetamine:

> Certain of the chemicals used in th[e] process are toxic and inherently dangerous. During the manufacturing process, some of these chemicals, which are highly flammable, present a threat of explosion. These chemicals pose an additional risk should anything go wrong during the manufacturing process. The process produces toxic gases, which pose a serious risk to those who inhale them, and other dangerous byproducts.

---

[1]In the 2004 Sentencing Guidelines Manual the relevant factors are set out in Note 20(A), with no changes to the relevant text.

*Layne*, 324 F.3d at 470. Because of the explosive nature of methamphetamine ingredients and the toxicity of the gases produced in its manufacture, we identified those who were endangered by Layne's activities as other residents in the eight-unit apartment building in which the methamphetamine lab was located, as well as the occupants of a nearby elementary school. *Id.* at 471. If the chemicals found in Layne's apartment can be considered to have created a substantial risk of harm to others *in the neighborhood*, it would be difficult to conclude that the district court was clearly erroneous in finding that many of those same chemicals also posed a substantial risk of harm to the life of the defendant's son, who was actually *on the premises* at the time the chemicals in this case were seized. Thus, this case is unlike the situation in our recent opinion in *United States v. Davidson*, 409 F.3d 304 (6th Cir. 2005), in which the methamphetamine lab was being operated behind locked doors in the loft of the defendants' barn. There we held that "the location [wa]s, relatively speaking, one of the least hazardous possible types of illegal methamphetamine manufacturing operations" and "clearly less dangerous to human life than the lab involved in *Layne*, where we did affirm a Substantial-Risk-of-Harm Enhancement." *Id.* at 314.

As in *Layne*, we find in this case that three of the four Application Note factors are satisfied: the quantity of hazardous materials and the manner of their storage (various dangerous chemicals, found throughout the house); the duration of the manufacturing operation (over a period of weeks, if not months); and the location of the lab and the number of lives placed in "substantial risk of harm" (unknown but including, most significantly, that of a minor). And as in *Layne*, we also find that the lack of information

concerning the fourth factor, *i.e.*, the manner of disposal of the hazardous materials and

likelihood of their release into the environment, does not militate against application of the

enhancement. *Id.* at 470-71.

## CONCLUSION

For the reasons set out above, we AFFIRM the judgment of the district court.