NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0487n.06
Filed: August 12, 2008

No. 07-5140

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF TENNESSEE |
| CARY PARADIS, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

Before: GILMAN and COOK, Circuit Judges; and COHN, District Judge.[*]

COOK, Circuit Judge. Cary Paradis pleaded guilty to two counts of attempting to manufacture methamphetamine, 21 U.S.C. §§ 841(b)(1)(C), 846, and the district court, after applying a six-level enhancement for creating "a substantial risk of harm to the life of a minor," sentenced him to concurrent 188-month sentences. Because the district court did not err in calculating the Guidelines range, we affirm.

I

Paradis admitted the following facts in his plea agreement: On October 30, 2003, a sheriff's deputy pulled him over, found him without a driver's license, and, searching him incident to arrest,

---

[*]The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

spotted twenty-seven grams of methamphetamine. With Paradis's consent, law enforcement then searched his home and found Paradis's girlfriend, Heather; her three-year-old daughter, Meagan; and a meth lab. Officers arrested Heather for child endangerment, and Paradis admitted that he had taken a "substantial step" toward manufacturing meth.

Results of this search supported the first count in Paradis's bargained plea; the second count came about from a later meth bust. Using the 2005 Guidelines, the presentence report ("PSR") grouped these two crimes for sentencing and held Paradis accountable for a drug quantity corresponding to a base offense level of 32. PSR ¶¶ 25, 26 (citing U.S.S.G. § 3D1.2(d)). The probation officer recommended a three-level acceptance-of-responsibility reduction, as well as a six-level "substantial risk of harm to the life of a minor" enhancement under § 2D1.1(b)(6)(C) (renumbered at § 2D1.1(b)(10)(D) in the 2007 Guidelines). Setting Paradis's criminal history category at II resulted in a 188-to-235-month sentencing range.

Paradis objected to the six-level enhancement, and two witnesses testified at the sentencing hearing. Detective Dwayne Hill, for the government, described the October 30 search. Paradis's mother Susan Michaud, who owned the house, testified on his behalf. After hearing this testimony, the court delivered a thorough oral decision, which included findings resolving disputed factual issues.

Specifically, the court found that the "lab was in operation," "Heather and her child Meagan were living at the house and they had been living at the house for at least two weeks," and Paradis

"knew that the child was in the house." Addressing the risk to Meagan, the court found "that the child was subjected to the chemicals, not only from the air that the child was breathing but [also] other chemicals that may have been present in the house." The court also noted that Paradis put Meagan at risk of fire and explosion inside the house, explaining that it had presided over "somewhere between 10 and 50 cases where there have been explosions and fires during the process of methamphetamine manufacture." In view of these findings and considering the applicable Guidelines provision and its factors, the court found "by a preponderance of the evidence, that there was a substantial risk of harm to the child Meagan in this case created by the operation of the methamphetamine laboratory, and therefore the presentence report has correctly applied the six-level increase for this." The court otherwise approved the PSR's calculation and sentenced Paradis to concurrent 188-month terms.

Paradis reasserts the objection raised at sentencing.

II

Paradis's procedural challenge requires that we confirm the district court "correctly calculat[ed] the applicable Guidelines range." *Gall v. United States*, 128 S. Ct. 586, 596 (2007). A sentencing court may apply a six-level enhancement if it determines by a preponderance of the evidence, *United States v. Smith*, 198 F. App'x 444, 447 (6th Cir. 2006) (per curiam), that the offense "(i) involved the manufacture of amphetamine or methamphetamine; and (ii) created a substantial risk of harm to the life of a minor or an incompetent," U.S.S.G. § 2D1.1(b)(6)(C) (2005).

We review for clear error the district court's factual findings, *United States v. Layne*, 324 F.3d 464, 468 (6th Cir. 2003), but review de novo its legal determination that a substantial risk of harm existed, *United States v. Whited*, 473 F.3d 296, 297 (6th Cir. 2007); *United States v. Brain*, 226 F. App'x 511, 514 (6th Cir. 2007) (per curiam).

The Guidelines do not define "substantial risk of harm," but the accompanying application note provides a list of nonexclusive factors that a court should consider: (1) the quantity of hazardous materials and the manner in which they were stored; (2) the manner in which hazardous substances were disposed and the likelihood of their release into the environment; (3) the duration of the offense and the extent of the manufacturing operation; and (4) the location of the laboratory (i.e., in a residential neighborhood or remote area) and the number of lives placed at substantial risk of harm. *Whited*, 473 F.3d at 297–98 (citing U.S.S.G. § 2D1.1 cmt. n.20(A)).

As explained below, we agree with the district court that Paradis's drug activity posed a substantial risk to Meagan's life. In particular, the evidence showed that Meagan had a bedroom only a few feet away from Paradis's meth lab.

Considering Factors (i) through (iii)

Paradis admitted cooking meth at the house, and, as the district court found, officers then discovered numerous hazardous items and strong toxic fumes corroborating that admission. When Detective Hill entered the house, he smelled a pungent chemical odor. Upstairs in a bedroom,

officers found over fifty items used to produce meth, including: forty-nine grams of pseudoephedrine, beakers, dishes with white residue, hydrogen peroxide, Coleman fuel, acetone, lye, antifreeze, coffee filters, matchbooks without strikers, and rubbing alcohol. Jars of chemicals sat on a dresser and on the floor, a microwave in the room contained soaking red phosphorus, a gas generator sat on the floor, and down the hall under the bathroom sink Hall found a gallon of muriatic acid. Outside, officers found assorted "meth trash." The items recovered here are almost indistinguishable from those recovered in *United States v. Layne*, where, in affirming a risk-of-harm-to-human-life enhancement, we observed: "Although these chemicals are probably typical of those used in indoor methamphetamine labs, the inherent danger of the[se] chemicals" favors the enhancement. 324 F.3d at 470.

As for the second factor, other than Hill's brief statement that officers found "meth trash," little establishes how Paradis disposed of the meth materials. But a lack of evidence on this factor does not necessarily aid Paradis. *See United States v. Patterson*, 481 F.3d 1029, 1034 n.3 (8th Cir. 2007). The second factor is geared to assessing environmental harm and is of little probative value in assessing harm to a minor's life, so an absence of information "does not militate against application of the enhancement." *Brain*, 226 F. App'x at 516 (citing *Layne*, 324 F.3d at 470–71).

Third, the "duration" factor is met by the district court's finding that Paradis operated the lab while Meagan and Heather lived in the house. Where the risk of harm involves a minor living at the place where the drug is being manufactured, federal courts have not required proof that the child was

present during numerous cooks or for any particular length of time. *See Whited*, 473 F.3d at 300–01 (applying the enhancement when officers discovered a minor in a hotel room containing an operational meth lab and a chemical smell); *United States v. Stewart*, Nos. 3:03cr76, 3:06cv29, 2006 WL 1934083, at *6 (N.D. Fla. July 10, 2006) ("Even a single instance of a minor being present during a methamphetamine cook has been held to be sufficient to warrant application of this adjustment." (citing *United States v. Deffebo*, 169 F. App'x 835 (5th Cir. 2006) (per curiam); *United States v. Siler*, 166 F. App'x 116 (5th Cir. 2006) (per curiam); *United States v. Spencer*, 150 F. App'x 901 (10th Cir. 2005); *United States v. Bell*, 151 F. App'x 216 (4th Cir. 2005) (per curiam)). And given the presence of materials throughout the house, the district court could properly infer that the process was on-going; Paradis at a minimum dabbled in meth production long enough to create strong fumes, stockpile the numerous items, and create the meth trash, all present at the time of the search. Even if this factor does "not suggest that the laboratory at issue was extraordinary, [it] nevertheless militates in favor of application of [§ 2D1.1(b)(6)(C)], which was designed to address the inherent dangers of methamphetamine manufacturing." *Layne*, 324 F.3d at 470–71.

### Considering Factor (iv)

The main dispute here centers on whether Meagan's life was placed at risk by the meth-manufacturing activities, and we agree with the district court that it was.

At the sentencing hearing, Michaud testified that Paradis had moved back home a couple weeks before the search and that Heather and Meagan would often sleep over. As she told it,

Meagan at first slept "downstairs on the couch," until they finished preparing her bedroom "next to Cary's room upstairs." Michaud's testimony matched Hill's recollection that, when officers arrived, Heather and Meagan came to the front door and that Heather later told him "[t]hey were living upstairs." Hill estimated that only "5 to 7 feet" separated Meagan's upstairs bedroom from the lab.

Paradis argues there was no proof at sentencing "other than the generic-type proof that methamphetamine ingredients and odors can cause harm to other persons." Appellant's Br. at 13. Federal courts usually reject such attempts to downplay the risk posed for two reasons. First, "[t]he Guidelines do not require the sentencing court to find that the . . . children were *actually harmed* by the [defendant's] production of methamphetamine, . . . only that their lives were placed at substantial *risk* of harm." *United States v. Bivens*, 129 F. App'x 159, 165 (6th Cir. 2005) (per curiam). And second, courts consistently recognize the meth-manufacturing process to be dangerous. *See United States v. Merrell*, 213 F. App'x 402, 406–08 (6th Cir. 2007); *Brain*, 226 F. App'x at 514; *United States v. Massey*, 79 F. App'x 832, 836–37 (6th Cir. 2003); *Layne*, 324 F.3d at 468–69 ("[T]hese chemicals and substances are utilized in a manufacturing process that is unstable, volatile, and highly combustible. Even small amounts of these chemicals, when mixed improperly, can cause explosions and fires." (quoting H.R. Rep. No. 106-878, at 22-23 (Sept. 21, 2000))); *see also United States v. Weeks*, 185 F. App'x 773, 777 (11th Cir. 2006) (per curiam); *United States v. Hargraves*, 176 F. App'x 629 (5th Cir. 2006) (per curiam); *United States v. McLaughlin*, 141 F. App'x 790, 792–93 (11th Cir. 2005) (per curiam).

The district court properly applied the enhancement. *See Brain*, 226 F. App'x at 515 (finding the enhancement appropriate where the same three factors are met); *Bivens*, 129 F. App'x at 165 (finding that district court properly applied the enhancement to defendants who stored meth-making supplies close to their children's bedroom, smoked the drug in the house, and kept a meth lab fifty feet away from the home); *Massey*, 79 F. App'x at 836–37 (upholding enhancement where the defendant conspired to manufacture meth in a shed attached to a home where a co-conspirator's wife ran a daycare center, when officers found meth paraphernalia and encountered thick fumes).

Paradis's situation differs from that in *United States v. Davidson*, where a meth lab did not pose a substantial risk to human life when operated in a remote, locked barn loft—we labeled that "one of the (relatively) safer places a person could set up an illegal methamphetamine lab." 409 F.3d 304, 314 (6th Cir. 2005). Here, in contrast, a three-year old child slept in a house for not insubstantial periods of time mere feet from where Paradis admits he operated a meth lab. It is irrelevant that, as Paradis suggests, Hill could not remember whether he used a breathing apparatus when entering the house, Appellant's Br. at 17, or that Michaud was allowed back into the house that night, *id.* at 18. *See Brain*, 226 F. App'x at 515 ("[I]t would be difficult to conclude that the district court [erred] in finding that [the meth] chemicals . . . posed a substantial risk of harm to the life of [a minor], who was actually *on the premises* at the time the chemicals . . . were seized.").

Finally, we cannot agree with Paradis that his case is like *United States v. Carney*, 117 F. App'x 928 (5th Cir. 2004) (per curiam). There the sentencing court read the enhancement to require

"[n]ot a risk to the life of the minor, but a risk of harm." *Id.* at 930. Paradis likens himself to the

defendant in *Carney* by targeting a single statement at sentencing where the court found "a

substantial risk of harm to the child Meagan." JA 84. We are assured, however, by the court's

reading of the enhancement's full language before announcing its sentence that it made the requisite

findings and spoke only in shorthand—the same shorthand defense counsel used. *See* JA 30 ("It's

the six-level enhancement relative to the substantial risk of harm to a minor child."). Paradis failed

to object, moreover, to any perceived shortcomings in the court's articulation, despite being offered

an opportunity to do so.

III

Paradis argues that, even if a preponderance of the evidence supported the enhancement, due

process required the government to justify its application by clear-and-convincing evidence because

the enhancement nearly doubled his advisory range. (Had the offense level been 29, the range would

have been 97 to 121 months.) *See United States v. Staten*, 466 F.3d 708, 717–20 (9th Cir. 2006).

Although Paradis's failure to raise this issue at sentencing results in plain-error review, *see United

States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc); *United States v. Ward*, 190 F.3d 483,

492 (6th Cir. 1999), we find no error, plain or otherwise.

This circuit faithfully applies the preponderance standard. We rejected identical arguments

before *Booker*, *see Layne*, 324 F.3d at 472–73; *United States v. Mayle*, 334 F.3d 552, 556–57 (6th

Cir. 2003); *United States v. Graham*, 275 F.3d 490, 517 & n.19 (6th Cir. 2001), and hold, along with

several circuits, that the remedial choice to make the Guidelines advisory left this standard intact, *United States v. Brika*, 487 F.3d 450, 461–62 (6th Cir.), *cert. denied*, 128 S. Ct. 341 (2007); *United States v. Gates*, 461 F.3d 703, 708 (6th Cir.), *cert. denied*, 127 S. Ct. 602 (2006); *see also United States v. Fisher*, 502 F.3d 293, 305–06 (3d Cir. 2007), *cert. denied*, 128 S. Ct. 1689 (2008); *United States v. Reuter*, 463 F.3d 792, 792–93 (7th Cir. 2006), *cert. denied*, 127 S.Ct. 1163 (2007); *United States v. Vaughn*, 430 F.3d 518, 525 (2d Cir. 2005), *cert. denied*, 547 U.S. 1060 (2006). We are bound by this precedent, *see Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985) ("A panel of this Court cannot overrule the decision of another panel."), but we also think it is correct.

*Brika* clarified that challenges to "large enhancements . . . should be viewed through the lens of *Booker* reasonableness rather than that of due process." 487 F.3d at 462. Having rejected Paradis's sole objection to the procedural component of his sentence, the relevant lens of reasonableness here is that of "substantive reasonableness." Because the district court's independent sentencing assessment comports with the views of the Sentencing Commission—i.e., because Paradis's sentence falls within the correctly calculated range—we afford this "double determination" a presumption of reasonableness. *Vonner*, 516 F.3d at 389; *Rita*, 127 S. Ct. at 2462. Paradis advances no argument to rebut this presumption, much less one to establish that the district court abused its discretion in selecting the 188-month sentence. *See United States v. Christopher*, 415 F.3d 590, 594 (6th Cir. 2005).

IV

Finding that the district court properly applied § 2D1.1(b)(6)(C) to enhance Paradis's offense level to 35, we affirm.